## JAMES Z. REEVES v. FRANK E. DIETZ AND THE EMPLOYERS' LIABILITY ASSURANCE CORP., INC., Appellant.

(January 19, 1925, Opinion and Decree.)

*(Syllabus by the Court.)*

1. Louisiana Digest, Master and Servant. —Par. 160-A.

The question of whether an injured employee claiming compensation under the Workman's Compensation Act should submit to an operation in an effort to cure or lessen his disability depends upon the reasonable character of the operation under the circumstances prevailing.

2. Louisiana Digest, Master and Servant. —Par. 160-A.

Where there is conflict of opinion among medical experts concerning the advisability of the operation the employee's refusal to submit thereto is not unreasonable.

3. Louisiana Digest, Master and Servant. —Par. 159.

An injury causing partial disability to work is covered by Sub-division C of Section 8 of the Compensation Act and not Sub-division D of Section 8 of the Act, where awards are made employees without reference to the effect upon earning capacity.

4. Louisiana Digest, Master and Servant. Par. 159-A.

The phrase "able to earn" as used in the Compensation Act in reference to wages an injured employee is "able to earn" subsequent to his injury does not mean the maximum sum earned in any one week but a fair average of the weekly wages which an employee is able to earn covering a sufficient period of time to determine his earning capacity.

Appeal from Civil District Court, Hon. Wm. H. Byrnes, Jr., Judge.

This is an action by an injured employee under the Employer's Liability Act, namely Act. No. 20 of 1914, page 44.

There was judgment for plaintiff and defendant has appealed.

Judgment amended and affirmed.

Habans & Coleman, attorneys for plaintiff and appellee.

Edw. Rightor, attorney for defendant and appellant.

WESTERFIELD, J. This is a suit by an injured employee for compensation at the rate of $10.80 per week for 300 weeks. The defendants admit the plaintiff was injured under circumstances entitling him to compensation and defend upon the following grounds:

"First: That the plaintiff's disability is of such a character that it could either be removed or greatly reduced by an operation, painless, without danger and with reasonable hope of success; that such an operation defendants have tendered plaintiff and plaintiff has refused; and that all compensation should be suspended until the plaintiff submits to such operation.

"Second: That the plaintiff's injuries are confined to a partial disability of the left hand; that the Act, Section 8, Sub-division D, paragraph 5, among the specific disabilities, fixes the compensation for the entire loss of a hand at 60% of wages during 150 weeks; that, it being conceded, even by plaintiff's counsel and physician, that the plaintiff retains a substantial part of the use of his hand, under no circumstances can this plaintiff recover beyond 150 weeks. Otherwise, he would recover for the partial loss of use of his hand a greater amount than he could recover for the total loss of use of his hand."

There was judgment below awarding compensation at the rate of $8.50 per week during disability and not exceeding 300 weeks and denying defendant's right to force the plaintiff to undergo an operation as a condition of the payment of compensation. The defendants have appealed and plaintiff has answered the appeal asking an increase in the weekly indemnity awarded plaintiff to $18.00 per week.

The learned judge of the court a quo based his refusal to require plaintiff to submit to an operation or in the alternative to a diminution of compensation upon the case of Bronson vs. Harris Ice Cream Co., 150 La. 455, 90 South. 759. Counsel for

plaintiff in his brief and oral argument contends (and the District Court seems to have been of the same opinion) that this case held that no operation, however slight or however small the danger to life, and whether the refusal of an injured employee to submit thereto was reasonable or unreasonable, could be required upon condition of affecting such employee's compensation. Counsel quotes the following from McNally vs. Hudson & M. R. Co. (N. J.), 95 Atl. 122:

"The idea is appalling to one's conscience that a human being should be compelled to take a risk of death, however slight that may be, in order that the pecuniary obligation created by the law in his favor against his employer may be minimized."

Of course, no one can be compelled to submit to an operation. The person of individuals is inviolate. The law can no more compel an operation than it can compel a marriage. Everyone has a natural right to do as he pleases with his person and property. It is only when his actions affect others that the law intervenes. However, it is a mistake to assume that the Compensation Law is philanthropic or eleemosynary in its purpose. In fact, the word compensation is a misnomer. It is not compensatory. The stipendiary allowances of the law are inadequate compensation for the injuries sustained and are less than allowed by the courts for similar injuries in cases not falling within its provisions. As its Germanic origin would suggest, it is socialistic and economic. The welfare of society, of the State, is its object and purpose. It can be justified upon no less exalted ground. In Hosh vs. La. Box Co., 9245 Orl. App., we said:

"When it is remembered that this act controverts long established principles of law in that it imposes upon the employer responsibility without fault or negligence on his part, may even be said to amount to a taking of property without due process, and can only be justified under the police

power, the most potent attribute of all governmental authority, the conclusion is irresistible that economic reasons of the most compelling sort and public policy of the most vital import supports its enactment. This is the more evident since every civilized country in the world, as we believe, has enacted this legislation. Among the most important economic purposes to be subserved we conceive to be that of preventing injured workmen becoming public charges and to that end it imposes upon industry the burden of maintenance of injured employees."

The law places the burden upon industry to repair as near as may be the damage it does to man as a member of society, a cog in the economic machine. It contemplates that the injured employee is the normal individual, desiring nothing so much as restoration to normal strength and usefulness, the God given right to work and that he will do nothing to create, continue or increase his disability by wilful or unreasonable conduct and thereby increase the burden upon society by reason of an unnecessarily prolonged disability due not to injuries received in the service of industry but to his laggard sense of his obligation to society.

Our appreciation of the Bronson case is in harmony with the foregoing general observations. In that case at page 457-8 the Court said:

"To the legal action which the injured employee might have to recover full indemnification, the act substitutes a right to partial indemnification, but seeks to facilitate and insure as far as possible the recovery of this indemnity. To that end it takes away defenses, simplifies procedure, and creates presumptions. That purpose would in a large measure be defeated if the door were opened for discussion as to whether the injured employee should or not have recourse to an operation. This would be adding uncertainty where the law clearly desires that there should be none.

"At the same time we must recognize that such a thing might be as an injury curable by an operation so simple and unattended by risk that plainly the real cause

of the disability would be not so much the injury as the not making use of the easy remedy at hand."

and after quoting a number of decisions from other states, the Court remarks:

"Most of these cases are inapplicable under our statute, except in so far as establishing the proposition that the injured employee must not be entirely unreasonable in refraining from an operation."

Though the Court held that the employee's compensation in that case could not be affected by his refusal to undergo an operation, its decision was based upon the fact that it would be unreasonable to have required him to do so, saying:

"In view of the age of the plaintiff and the seriousness of the operation requiring the administration of an anaesthetic and in view of the natural (though unreasoning and we may add groundless) prejudice against resorting to the Charity Hospital, we do not think plaintiff's unwillingness to submit to an operation was entirely unreasonable."

In the well-reasoned case of Strong vs. Sonken-Galamba Iron & Metal Co. (Kan.), 198 Pac. 182, the authorities, English and American, are reviewed and the conclusion reached that the plaintiff's refusal to submit to an operation was unreasonable, the Court saying at page 186 of the opinion:

"The State goes to great expense to fit its people for work, to protect them in their work, and to secure to them the result of their labor. Then if a man who receives these favors from the State will not work he at least is not a good citizen.

"The plaintiff has been injured. The injury can be remedied, and he can be restored to his former condition. It is his duty to do whatever is necessary to restore him. If he refuses to perform that duty, he should not ask the State nor any person to assist him in that refusal. He cannot be compelled to undergo an operation, but he can be told that if he refuses he shall not receive compensation for that which he voluntarily continues."

In Donnelly vs. Baird & Co., Ltd., 1 B. W. C. 95, an English case cited in the

Strong case (supra), Lord Justice Clerk said:

"I hold it to be the duty of an injured workman to submit to such treatment, medical or surgical, as involves no serious risk or suffering, such an operation as a man of ordinarily manly character would undergo for his own good, in a case where no question of compensation due by another existed."

and in the same case Lord McLaren said:

"I can see no general principle except this, that if the operation is not attended with danger to life or health, or extraordinary suffering, and if according to the best medical or surgical opinion the operation offers a reasonable prospect of restoration either submit to the operation or release the workman is suffering, then he must either submit to the operation to release his employers from the obligation to maintain him." Page 102.

In Donovan vs. Railway & Light Co., 132 La. 239; 61 South. 216, a case quoted with approval by the Kansas Court in the Strong case, the Court said:

"Where one has been injured but is advised by competent physicians that the injury can be remedied by an operation that is ordinarily not dangerous, but refuses to submit to the operation, she is not minimizing her damages, and can not recover for the sufferings which would be avoided by the needed operation. It is incumbent upon the injured person to submit to reasonable treatment and to follow the advice of competent physicians."

We will now consider the reasonableness of plaintiff's refusal to sumbit to the operation. His injury consisted of a severance of the muscles, tendon tissues, etc., of the left forearm by a circular saw. As a result of this injury and the attempt to repair it, plaintiff was permanently disabled in that there was numbness in the hand and inability to close the fingers, lack of sensation in the palm, inability to grip objects and pain upon exertion. In the words of a specialist testifying on behalf of defendant:

"Claimant presents a slightly depressed scar 2 inches by 1-8 of an inch on the lower of the middle third of the left forearm, palmar external side. There is a loss of sensation on the back of the hand, entire thumb, 2nd and 3rd digits and external half of 4th digit, also the external palmar lower forearm to the scar. Flexor power of all the fingers and the hand and opponens power of the little finger and thumb are restricted seemingly by involvement in the scar of these muscles; the fingers, thumb and wrist however, allow of fully two-thirds of normal flexion, but not near enough to allow claimant to make a fist or even grasp a large object with any degree of force.

"The loss of skin sensation is likely permanent and will constitute a slight permanent disability."

The plaintiff is a carpenter by trade, an occupation requiring great freedom of muscular action, particularly of the arms, hence the nature of plaintiff's injuries particularly affect his vocation. All the evidence is to the effect that his disability will be permanent unless operated upon. The character of the operation suggested by defendant is thus described by Dr. Simon testifying in defendant's behalf: "The operation would consist in the removal of the skin-scar and a dissecting out of the different tendons and bellies as they go down— the muscle-bellies; and then an attempt to find the several nerve ends and join them." Concerning the prospect of success the testimony is conflicting. Not one of the three doctors who testified in the case believed that a complete restoration of the arm and hand to normal functioning was possible. Two of the doctors testifying for plaintiff advised against the operation, while Dr. Simon for defendant thought it advisable and it was admitted that if Dr. Boulet were present he would corroborate Dr. Simon. Drs. Boulet and Simon are orthopedic surgeons or specialists, and Drs. LeBlanc and Rudolph for plaintiff are general practitioners, though Dr. Rudolph has had considerable surgical experience in the

World War. Dr. Simon thinks plaintiff would have "a fairly excellent chance" of improved muscular capacity in his arm and hand with no chance of being in a worse condition that at present. Dr. Rudolph thinks there is a possibility of plaintiff losing the little use he has of his hand (he can use his index finger and thumb to some extent at present) and that the muscles may atrophy. Both Dr. Rudolph and Dr. LeBlanc refer to danger of infection as a remote and disastrous possibility. It will require possibly one year of post-operative treatment before positive and definite results can be ascertained. Plaintiff has experienced one operation of a similar character performed just after his accident, when the muscles and nerves were "sutured" as it is proposed to do in the suggested second operation. The chances of success are said to be greater when the operation is performed soon after the injury, though just how soon is disputed. More than a year has now elapsed since plaintiff was injured. We conclude that under the circumstances of this case the plaintiff's refusal to submit to the operation proposed was not unreasonable.

The second point raised by defendant is that plaintiff's claim is controlled by paragraph 5, Sub-division "D" of Section 8 of Compensation Act which allows 60 per cent of difference between wages earned at the time of injury and wages which employee is able to earn thereafter during period of disability, not, however, beyond 150 weeks. Plaintiff claims that Sub-section C of Section 8 of the act controls. The difference between the two provisions of the law is that the maximum period of disability for which compensation is awarded is 150 weeks in one case and 300 weeks in the other. Sub-section D fixes compensation for the loss of a hand and the contention is that since the Amendatory Act of 1922 declares that "the permanent total loss of the use of a member is equivalent to the amputation of the member" that plaintiff having lost the use of his hand must be controlled in his claim for compensation by this section. We do not agree with counsel. In the first place plaintiff has not lost the entire use of his hand and moreover Sub-section D relates to injuries without regard to the effect upon earning capacity, whereas Sub-section C controls when the injury produces "partial disability to do work of any reasonable character".

The remaining question for our determination is the amount of weekly allowance. The law fixes it at 60 per cent of the difference between the sum earned before the accident and amount the employee "is able to earn thereafter". Counsel would interpret the words "able to earn" as meaning the maximum sum earned during any one week. On the principle that what man has done man may do. We do not so interpret this phrase of the statute. We think the act contemplates that compensation shall be 60 per cent of the difference between the average amount the employee is able to earn before and after the accident covering a period long enough to determine such average. In Gorman vs. Gulf Co., No. _____ Orl. App., we said:

"The basis of compensation under the Workman's Compensation Statute is the employee's average weekly wage, which the statute itself defines as being the annual earnings of the injured divided by 52."

The evidence concerning plaintiff's earnings since the accident as well as before is not as satisfactory as it might be, however, it sufficiently appears that plaintiff should have at least as much as he claims in his petition, or $10.80.

For the reasons assigned the judgment appealed from is amended so as to increase the weekly compensation of plaintiff from $8.00 to $10.80 per week and in all other respects it is affirmed.