No. 2315

Second Circuit

---

HILLIARD v. MERKEL CONSTRUCTION COMPANY, INC.

---

(April 10, 1926. Opinion and Decree)

---

*(Syllabus by the Court.)*

1. **Louisiana Digest—Master and Servant —Par. 160 (a).**

An injured employee, who is shown by the evidence to be not a first class risk for an operation, will not be required, as a condition precedent to the right to prosecute a suit for compensation under the Workmen's Compensation Law, to submit to an operation for hernia.

Bronson vs. Harris Ice Cream Co., 150 La. 455, 90 South. 759.

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo, Hon. E. P. Mills, Judge.

Action by Milas Hilliard against Merkel Construction Company, Inc., for compensation under the Workmen's Compensation Law, Act No. 20 of 1914. There was judgment suspending plaintiff's rights to com-

pensation until he submitted to an operation. Plaintiff appealed.

Judgment reversed and case remanded.

Vernis Morgan, Huey P. Long, of Shreveport, attorneys for plaintiff, appellant.

Wilkinson, Lewis and Wilkinson, of Shreveport, attorneys for defendants, appellees.

## STATEMENT OF THE CASE

REYNOLDS, J. Plaintiff sues to recover damages under the workmen's compensation law of Louisiana. Defendant contends that plaintiff's injury could be cured by a simple surgical operation, unattended by risk of life or health, which operation it tendered him at its own expense as an act of charity. Plaintiff refused to submit to the operation, claiming that it was not unattended with risk to his life.

The district court rendered judgment staying plaintiff's right to further prosecute his suit and suspending his right to compensation until and unless he submitted to the operation tendered him by the defendant. The plaintiff appealed.

## OPINION

The question to be decided in this case is whether plaintiff's refusal to be operated on for hernia deprives him of the right to recover in this case any damages to which he may be entitled under the Workmen's Compensation Law.

We know of no provision in the law that makes an injured employee's right to recover compensation for injuries received in performing services arising out of and incidental to his employment in the course of his employer's trade, business or occupation dependent upon the employee's willingness to submit to an operation.

In Bronson vs. Harris Ice Cream Co., Ins., 150 La. 455, 90 South. 759, the Supreme Court dealt with this question and said:

"* * * section 28 of the act specified the conditions under which compensation shall not be allowed, and does not include among them the refusal to submit to an operation. The act in its section 36, provides further: 'That no contract, rule, regulation or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this act except as herein provided.'

"To the legal action which the injured employee might have to recover full indemnification the act substitutes a right to partial indemnification, but seeks to facilitate and insure as far as possible the recovery of this indemnity. To that end it takes away defences, simplifies procedure, and creates presumptions. That purpose would in a large measure be defeated if the door were opened for discussion as to whether the injured employee should or should not have recourse to an operation. This would be adding uncertainty where the law clearly desires that there should be none."

This holding of the Supreme Court, it seems to us, closes the door on the right of the courts of Louisiana to require an injured employee to undergo an operation as a condition precedent to his right to recover compensation under the workmen's compensation law.

The Supreme Court, in Bronson vs. Harris Ice Cream Co., Inc., 15 La. 455, 90 South, 759, supra, after deciding the law to be as above quoted from that decision, said:

"At the same time we must recognize that such a thing might be as an injury curable by an operation so simple and unattended by risk that plainly the real cause of the disability would be not so much the injury as the not making use of the easy remedy at hand."

We find some difficulty in entirely harmonizing the two holdings.

However, the evidence in this case does not convince us that the proposed operation would be unattended with risk to plaintiff's life or health.

Doctor Thomas Ragan, a conscientious, skilled and experienced surgeon of Shreveport, made an examination of plaintiff under order of court and reported, record page 12, that—

"His mental attitude was that of suspicion and fear. He left the sanitarium for fear that some operation might be done. Operated cases in the ward accentuated this fear with him. He was ignorant, unreasoning and distrusted every one. He said that every member of his family that had had an operation had died. He insisted that he had broken bones and would be an invalid for the balance of his life. * * * His blood pressure was systolic 180, diastolic, 105; the heart was enlarged to the left and his arteries were thickened * * *."

"Doctor, what danger would there be in an operation for hernia?
"A. Well, with the ordinary man I would not consider it dangerous. I would not consider the danger was worth giving a thought to; but in his case, as I know his case, he is not a first class risk; no question about that; no surgeon would say that he was. But I would consider the risk in his case was negligible from an operating standpoint respecting the hernia.

* * *

"Q. Now, doctor, you have just stated on the stand, that this man is not a first class risk; now I will ask you to explain your interpretation of what is a first class risk for a man that is going to be operated on.
"A. Well, as far as that is concerned, we figure that in most cases any one can stand an operation in such cases, but in his case the risk is negligible.
"Q. The chances are he would recover?
"A. Yes, sir.

"Q. But at the same time you would not guarantee that he would not die?
"A. No, sir, not at all."

Doctor A. P. Crain, another distinguished surgeon of Shreveport, testified, pages 68, 73 and 74:

"Q. How serious an operation is it, doctor?
"A. Well, I never considered it serious —of course in the true sense of the word —Dr. Ragan answered that pretty well; answered it as good as I can. Of course you can't absolutely guarantee that a man will get well; no one would guarantee it; but I would not consider it serious; I would consider the risk negligible as far as life is concerned.

* * *

"Q. Would you say 180 systolic was normal?
"A. No, it is not.
"Q. Then 180 systolic is abnormal for a man of his age, 41?
"A. Yes, sir, for a man of his age it is too high.
"Q. Too high?
"A. Yes.
"Q. Would that not be considered in determining whether or not he is a good risk for an operation?
"A. Well, I would consider that, but of course I don't think it would be dangercus unless he took a general anæsthetic.
"Q. Now would an abnormal blood pressure make him an intermediate risk or not?
"A. Well, just from looking at the man I would not consider him really a first class risk, yet I would not consider him a bad risk."

Doctor J. C. Willis, Jr., another distinguished surgeon of Shreveport, testified, pages 17, 18, 19:

"Q. You would not class him as an extra bad risk?
"A. No, I would call him an intermediate risk.
"Q. Now, the plaintiff states that he is deathly afraid of undergoing an operation; now would that have any bearing upon the probability of his recovery?
"A. I think so, and most surgeons think so when a patient has a premonition that

they are not going to survive an operation, they are not good subjects for an operation.

\* \* \*

"Q. Now, is the excessive blood pressure in this case cause you to say that he would not be a good risk for an operation?
"A. Well, that is one of the factors; as I said, I don't think I would call him an extra good risk because the man says that he fears an operation, and those are never classed as good risks.

\* \* \*

"Q. Doctor, you testified that this man was not such a bad risk; what kind of a risk did you class him?
"A. Well, I would call him an intermediate risk."

Doctor R. A. Paine, another eminent physician, testified, page 35:

"Q. Would you recommend an operation where a man had a premonition that he was going to die on the operating table?
"A. Well, I would have special regard for a person who believed he was going to die on the operating table but he would have to give me some reason for it to respect it. I would of course hate to advise an operation on a person who thought he was going to die on the operating table."

Under the law and the evidence in the case we do not think the court warranted in suspending plaintiff's right to proceed with his suit for compensation until he undergoes the operation tendered him by defendant as an act of charity.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be annulled, and this case is remanded to the trial court to be proceeded with according to law and the views herein expressed.