No. 2547

Second Circuit

MARTIN v. WYATT LUMBER COMPANY

(April 10, 1926, Opinion and Decree)
(May 7, 1926, Rehearing Refused)

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Master and Servant —Par. 160 (a), 160 (d).**

Although the Workmen's Compensation Act No. 20 of 1914 does not specifically require that an injured employee shall submit to medical or surgical treatment, nevertheless the injured person must do what he can within reason to minimize the damage.

2. **Louisiana Digest—Master and Servant Par. 160 (a).**

All operations for hernia are serious to some extent and accompanied with suffering, risk or danger and, therefore, the court in interpreting the Workmen's Compensation Act No. 20 of 1914 will not deem it unreasonable

.for an injured employee to refuse to accept treatment involving an operation for hernia.

**3. Louisiana Digest—Master and Servant —Par. 158, 160 (a).**

The Workmen's Compensation Act No. 20 of 1914 provides that the employee who is disabled by an injury arising out of and in the course of his employment is entitled to compensation, and this is true, although the injured employee refuses to submit to an operation for hernia.

**4. Lousiana Digest—Master and Servant Par. 160 (I).**

Where the injured employee is forty years old and strong, and has a medium-size hernia which has not progressed very far, the court, in order to determine the compensation to be granted, will remand the case for further evidence as to what the injured employee is able to earn with the use of a truss.

Appeal from the Eleventh Judicial District Court of Louisiana, Parish of Sabine. Hon. Hal A. Burgess, Judge.

Action by Louis J. Martin against Wyatt Lumber Company for compensation under the Workmen's Compensation Act No. 20 of 1914.

There was judgment for plaintiff and defendant appealed.

Judgment reversed and case remanded to the District Court for further testimony as to what plaintiff is now able to earn.

F. M. Wood, of Leesville, attorney for plaintiff, appellee.

Ponder & Ponder, of Many, attorneys for defendant, appellant.

ODOM, J.   Plaintiff was employed by defendant as a common laborer to do work at its sawmill at a daily wage of $2.25.

On August 5, 1925, while at work, in the course of his employment, he received an injury which produced an inguinal hernia.

Alleging total permanent disability to do any work of a reasonable character, he asked for compensation at 65 per cent of his wages for 400 weeks.

Defendant set up, in answer, two defenses:

1. That plaintiff refused to submit to a surgical operation tendered him, at its own expense, which, it is alleged, would cure him; and,

2. That plaintiff is not totally disabled.

The District Judge rendered judgment in plaintiff's favor of the amount sued for and defendant has appealed.

OPINION.

Considering these defenses in the order set out above, we must determine first whether plaintiff must forego compensation in view of his refusal to submit to a surgical operation for inguinal hernia.

Plaintiff is a colored man, forty years old, so far as the record discloses, is strong and in good health.

Soon after he received the injury, which resulted in a medium-size inguinal hernia on the right side, he was taken by Doctor Johnson, the defendant's physician, who

at once carried him to the Fisher Sanitarium, where arrangements were made for an operation.

Owing to the crowded condition of the sanitarium at the time, it was understood that plaintiff should return two days later for the operation.

Whether plaintiff ever consented to the operation or not is not clear, but the record discloses that he did not return, and finally concluded that he would not return and accept the proposed .operation.

The pleadings and evidence make it clear that the defendant has offered plaintiff no treatment except a surgical operation.

Plaintiff had no physician to advise him, and it does not appear that he was consulted as to what treatment should be administered; but .he was carried to the sanitarium, arrangements made for an operation, and he was so informed.

Counsel for plaintiff, in oral argument and in brief, directs our attention to paragraph 1 of Section 1 of Act No. 20 of 1914, which provides that the provisions of the Act:

"* * * for such employee and employer the payment of compensation, according to and under the terms, conditions and provisions hereinafter set out in this Act, shall be exclusive, compulsory and obligatory; * * *."

And to Section 36 of the Act, which provides:

"That no contract, rule, regulation or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this Act, except as herein provided."

With these provisions of the statute in view, counsel for plaintiff asks the court to hold that an injured employee is entitled to compensation during disability, even though it be certain that a surgical operation tendered him at the employer's expense would relieve his disability, however simple, and unaccompanied by pain, risk or danger to health or life such an operation might be.

In other words, that under no conditions or circumstances has an employer the right to ask that an injured employee submit to an operation at the employer's expense or else forego compensation.

To so hold would be equivalent to saying that an injured employee has the right to willfully, arbitrarily and without reason or excuse, prolong his disability, destroy his usefulness to the state and society, deprive his dependents of support and make himself a charge upon the community.

Such conduct on the part of an injured employee would be in violation of every consideration of duty and good citizenship.

To hold that an employee has the right to destroy his own usefulness by willful neglect or refusal to accept simple and harmless treatment, as a means for recovery, tendered him at the expense of his employer, in order to obtain compensation, would be violative of the dictates of reason, common sense and good conscience, and would set the stamp of approval upon the conduct of the malingerer.

. It is true that our workmen's compensation statute does not specifically require that an injured employee shall submit to medical or surgical treatment; nevertheless it is well settled that an injured person must do, what he can, within reason and safety, to minimize the damage. It has been so held in personal injury cases by all the courts, including the United States Supreme Court.

See Donovan, et al., vs. N. O. Ry. & L. Co., 132 La. 239, 61 South. 216, and authorities there cited.

The same rule applies in cases arising under the workmen's compensation statutes.

In the case of Charles Lesh vs. Illinois Steel Co. (Wisc.), 157 N. W. 539, (L. R. A. 1916E), the court held as follows, quoting from the syllabus.

"Continuing disability of a workman injured* in the course of his employment due to his refusal to submit himself to safe and simple medical treatment is not proximately caused by the accident so as to bring himself within the operation of the workmen's compensation act providing compensation where the injury is proximately caused by the accident."

In the case of Bronson vs. Harris Ice Cream Co., 150 La. 455, 90 South. 759, the court said:

"At the same time we must recognize that such a thing might be as an injury curable by an operation so simple and unattended by risk that plainly the real cause of the disability would be not so much the injury as the not making use of the easy remedy at hand."

Many cases to the same effect from other jurisdictions might be cited.

But the question, as to whether an employee should submit to an operation tendered at the employer's expense, depends upon the nature and kind of operation tendered.

In a case note found in 6 A. L. R. 1260 we find the general rule stated as follows:

"It is a settled rule that an injured workman will be denied compensation for incapacity which may be removed or modified by an operation of a simple character not involving serious suffering or danger."

In support of this rule there are cited cases from Illinois, Indiana, Michigan, England and Scotland.

All the cases hinge, however, upon the question whether the operation is serious and accompanied with suffering, risk or danger, or whether it is simple and unaccompanied with risk.

In Donnelly vs. Baird & Co., 1 Brit. Workmen's Compensation cases (Scotland) 95, Lord McLaren said:

"In view of the great diversity of cases raising this question, I can see no general principle except this: That if the operation is not attended with danger to life or health or extraordinary suffering, and if according to the best medical and surgical opinion the operation offers a reasonable prospect of restoration or relief from the incapacity from which the workman is suffering, then he must either submit to the operation or release his employer from the obligation of maintaining him."

"The rule, however, is different when the proposed operation is a serious one, and refusal to submit to such an operation will not defeat compensation."

And in another English case it was held that compensation was not barred because

of the refusal of the workman to undergo an operation, although probably successful, "which would be attended with a certain amount of risk".

In the case of Gilbert vs. Fairweather, 1 B. W. C. C. (England) 349, the court refused to vary an award to terminate the compensation of a workman because he refused to submit to an operation which was trivial in character and practically certain to prove successful, and held that a reasonable man should submit to the operation, but the matter was one for the Court of Appeals to pass upon, but said:

In a leading case by the New Jersey court, McNally vs. Hudson M. R. Co., 87 N. J. L. (95 Atl. 122), in speaking of the duty of an employee to submit to an operation, the court said:

"Although the peril of life seems to be very slight, forty-eight chances in twenty-three thousand, nevertheless the idea is appalling to one's conscience that a human being should be compelled to take risk of death, however slight that may be, in order that the pecuniary obligation created by law in his favor against his employer may be minimized."

Such, in fact, is the holding in Bronson vs. Harris Ice Cream Co., supra, and in the case of Reeves vs. Dietz, 1 La. App. 501.

Therefore, the only question for us to determine is whether an operation for hernia is one simple and unattended by risk or danger to life.

In the case at bar, there ware four physicians called as witnesses by defendant and none called by plaintiff. The substance of the testimony of these physicians is that an operation for hernia is simple and unaccompanied by risk.

Some portions of their testimony would indicate that they recognize the fact that there is at least some danger connected therewith.

Doctor Johnson, after saying that plaintiff could be cured by a simple operation, was asked, on cross-examination, if the medical authorities did not hold that not all operations of the kind were successful, and he replied:

"Might be one occasionally."

and was asked if plaintiff's case might not be one of the unsuccessful ones, and he said:

"Something else might cause his death."

And that the operation would not likely do so.

Doctor Lester, the coroner, said there was scarcely any danger from the operation.

Doctor Younger stated that the operation is not attended with risk, but, on cross-examination, he was asked:

"Is it not just a simple operation?"

And he said:

"It isn't difficult, no, sir."

Whether he meant that the operation is not accompanied with risk, is not clear from that answer. It seems to us rather evasive of the point. An operation may

not be difficult for a surgeon to perform but yet be fraught with serious consequences from the standpoint of the patient.

But even though the four physicians who testified in this case were of the opinion that such an operation is not serious, their testimony does not foreclose the point; for out of the four, only one, Doctor Younger, is a surgeon. Not one of the others had ever performed an operation for hernia, and, so far as we know, had never witnessed one, such practice is out of their line, and we cannot rely upon their opinion, which they confess they know nothing.

Doctor Younger testified that he is a surgeon by profession, although if he ever performed an operation for hernia or if he ever saw one performed he did not say so. So far as the court is informed, he has had neither experience nor observation in this particular line of surgery. Therefore we cannot be guided in our opinion on the point solely by the testimony in this case.

We are inclined to believe that these physicians were rather slack in their statements as to the seriousness of this kind of an operation, if, indeed, it may be said they knew anything about it. We cannot dismiss from all consideration the common experience and observation of mankind. It is a fact known to all that men do sometimes die from the effects of an operation for hernia.

In an exhaustive note found in 20 A. L. R., beginning on page 48, under the general heading of "Necessity and sufficiency of evidence that disease contracted by applicant for workmen's compensation is at-

tributable to the employment", and the subheading "Hernia, the annotator reviews thirty one cases relating to hernia. A reading of his note in those cases will disclose that it is mentioned incidentlly in seven of the thirty-one cases there were operations, and in five of those cases the patient died. In some of the cases the patient had strangulation and in one or two it is mentoned that the patient died from post-operative shock. It may be that all of the cases referred to were aggravated, but the fact remains that the operation was for hernia and that the patient died.

Furthermore we cannot close our minds to what we know to be the opinion and experience of eminent surgeons of great learning and years of actual practice along this line.

Cases involving the nature of this operation and its effect have been before us more than once.

In the case of Robert S. Bossier vs. Louisiana Oil & Refining Corporation, 3 La. App. 205, the plaintiff was suffering from hernia which he had received in the course of his employment.

In that case, as in this, defendant tendered an operation which was refused, and the point was made and strenuously stressed that an operation for hernia is not dangerous. There were four eminent physicians called as witnesses and testified on that point. One of the four said the chances for recovery were fair but not absolute; that there are fatalities attending such operations; another said the conservative treatment for hernia is a truss and the radical treatment an operation, and said, further, that the operation

is comparatively safe; that it is as safe as most abdominal operations, and that in some cases the patient loses his sexual powers; another said his observation was that ninety-six or ninety-seven per cent were cured, but that complications some times arose with serious results; and another said that such operations required greater skill than an operation for appendicitis and that some operations for hernia prove fatal.

We have had other cases before us involving the same question in which other physicians and surgeons have testified, but in no one of them has any physician or surgeon testified that such an operation is unaccompanied with risk or danger to life.

It is a fact known to all that hundreds of men of intelligence and with means to procure the services of the greatest surgeons of the land, go through life wearing trusses for hernia rather than submit to an operation, notwithstanding the fact that a truss is a source of discomfort in many cases and always inconvenient and more or less cumbersome. The average man dreads any kind of an abdominal operation. Instinctively he feels that when he submits to such an operation he takes a chance of losing his life, and from observation he knows that is true.. For that reason men of intelligence endure afflictions through life rather than take a radical treatment which in all probability would relieve the disability but at the same time might end fatally. It may be said, we think, that the more informed people are as to the results of such operations the less they dread them, but the fact remains that the best informed do dread them. That being true, what may be expected of the average. wage-earner who is not informed? He shrinks in-

stinctively from what are recognized to be major or serious operations, and the advice of all the experts cannot remove from his mind the fear and dread of such radical treatment.

His feeling in the matter must be respected. The compensation act provides that the employee who is disabled by an injury arising out of and in the course of his employment is entitled to compensation. He is entitled to compensation as a matter of law and therefore of right. To withhold compensation because of his refusal to submit to such an operation, would be a denial of his rights under the law; for it is unquestionably true that many employees would rather forego compensation than take the chance.

As we have already said, an employee has no right to prolong his disability by unreasonably refusing to accept treatment by a simple, harmless operation when such operation would, in all probability, relieve his disability; but we do not think it unreasonable for an employee to refuse to accept treatment involving an operation for hernia.

This question of whether an injured employee must submit to an operation for hernia or else foregoing compensation, is constantly agitating the bar and is fruitful of much controversy and litigation. We have considered the question thoroughly, and our final conclusion is, that we will not order an employee to undergo an operation for hernia or else lose his right to claim compensation.

In so holding, we have considered first above all the seriousness of any abdominal operation and the instinctive dread that the average individual has for the knife. Surgeons, as a rule, advise such opera-

tions as considering them not extremely dangerous, but if they are pressed for an opinion they always say that disastrous results may follow either as a result of complications or shock or as the result of the administration of an anaesthetic. Complications may arise in any kind of an operation, it is true; infection or blood poison may result from the removal of a finger or a toe, and so an operation on the hand or foot may result in serious consequences; but the difference between an operation on a member of the body and an abdominal operation is: if infection result from an operation on a member of the body, the condition is easily treated and controlled and, as a last resort, the whole member of the body might be removed in order to save the life, whereas if such condition result from an operation on the abdomen, it is usually fatal. Hence the dread and fear of abdominal operations.

Another consideration is, that there is another well recognized and very common treatment for hernia, and that is the truss. The truss is the conservative treatment; the operation the radical treatment.

According to the testimony in this case, the use of a truss frequently restores a man to usefulness again. If an employee can be restored to usefulness by the use of a truss, why call upon him to submit to so radical a treatment as an operation?

In this case it was not suggested to plaintiff that he try a truss. All the physicians say he can continue to work even in his present condition. If defendant desires to treat him, why not first provide him with a truss and watch the results? Under the law, where continued disability may be removed by either one of two treatments, the one conservative and perfectly harmless and the other radical and attended with risk, the employer has no right to arbitrarily say to the employee that he must accept the radical treatment or else forego compensation.

The court below correctly held, we think, that plaintiff was not unreasonable in refusing the operation.

However, on the other branch of the case, that is, as to his total disability to do work of a reasonable character, we think the court erred, for the testimony does not warrant that holding.

Plaintiff says he can do no work. We cannot accept his uncorroborated statement to that effect, for the testimony shows and experience teaches that men afflicted as plaintiff is can do some work, especially with the use of a truss.

There are cases where courts are warranted in accepting the statement of an employee that he is unable to work, but in such cases the testimony must be corroborated by the circumstances and the nature of the affliction.

Plaintiff has a medium size hernia, which has not progressed very far. He is forty years old and strong; and all the testimony shows that other men similarly afflicted can do some work. One man testified that he had a hernia and had been afflicted for quite a long time, and that he had worked every day; but he did not say what kind of work he did. Unquestionably the plaintiff can do some work, but we cannot tell what he is now able to earn. The case will therefore have to be remanded for further testimony and the question of his present earning capacity.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from allowing plaintiff compensation as for total permanent disability be reversed and set aside, and it is further ordered that the case be remanded to the district court for further testimony as to what plaintiff is now able to earn; costs of the appeal to be borne by appellee; all other costs to await the final result.