## CRAWFORD v. TAMPA INTER–OCEAN S. S. CO., Inc. *

### No. 14929.

Court of Appeal of Louisiana. Orleans.
June 11, 1934.

Rehearing Denied June 28, 1934.

J. A. Woodville, of New Orleans, for appellant.

Terriberry, Young, Rault & Carroll, of New Orleans, for appellee.

JANVIER, Judge.

In the course of his labors as an employee of defendant, Peter Crawford sustained an inguinal hernia. He was operated upon by surgeons, the operation was pronounced a success, and he was paid compensation from the time of the injury until the surgeons discharged him as cured.

After he had left the employ of defendant, he again complained of a hernia and made claim against defendant, his former employer, for compensation for permanent total disability. The employer contended that there was no relationship between the second hernia and the original accident and injury, and that it had resulted from a new and independent cause. Plaintiff, however, maintained that the new hernia was merely a recurrence of the old, and, on appeal to this court, we so held and rendered a decree awarding him compensation at $20 per week for 400 weeks. See Crawford v. Tampa Inter-Ocean S. S. Co., Inc. (La. App.) 150 So. 875.

After our decree had become final, the employer caused a further medical examination to be made, and reached the conclusion that another surgical operation upon Crawford would entirely relieve him of his disability, that such an operation would be attended with no serious risk, and that in not more than eight weeks after the operation Crawford would be entirely well and able to return to gainful employment.

By rule nisi, the employer called upon Crawford to submit to an operation at the cost of the employer, or, in the alternative, to show cause why the compensation payments should not be discontinued at the end of the period of eight weeks. Crawford refused, and, after a hearing in which evidence as to the danger of and probability of success of the operation was submitted, the district court rendered a judgment, the pertinent portion of which reads as follows: "It is ordered, adjudged and decreed that unless Peter Crawford, defendant in rule, submits himself to be operated upon for a right inguinal hernia, said operation to be performed by Dr. E. A. Ficklen, or in the event Dr. Ficklen is unable to perform said operation, then by some other surgeon in the City of New Orleans, to be approved by the said Peter Crawford, on or before the 31st day of March, 1934, then, in that event, the said Tampa Inter-ocean Steamship Company, Inc., upon paying weekly compensation at the rate of $20.00 per week to said Peter Crawford up to the 31st day of March, 1934, and eight weeks' addi-

tional compensation at the same rate, commencing from the 31st day of March, 1934, shall be discharged from all further liability to pay any further compensation to the said Peter Crawford."

From this judgment Crawford has appealed.

There is no statute law to which the employer can point as authority for the contention that an injured employee may be compelled to submit to an·operation as an alternative to the discontinuance of compensation payments. But it is asserted that the general rule that any injured party must do all that he reasonably can to minimize his loss requires that, where an operation will be attended by only slight risk and will almost certainly be successful, it must be resorted to.

The principle for which the employer contends was announced by the Supreme Court of Louisiana in Donovan v. N. O. Ry. & Light Co., 132 La. 239, 61 So. 216, 48 L. R. A. (N. S.) 109, in which the injured party, having sustained a hernia and having refused to submit to a surgical operation, was held to have failed to minimize her loss. There the recovery was fixed at the amount to which she would have been entitled had she submitted to the operation and had it been successful. The court said:

"We have no reason to deduce that she had any of the ailments which render the use of an anæsthetic dangerous, such as disease of the heart or other ailment. Fifteen days supinely on the back after the operation was the additional suffering which perhaps influenced her not to submit to the operation. It must be said that that would not be a pleasant experience, but it is best to endure that than be subject to recurring pains. The physicians stated that the chances were favorable in operations of the kind mentioned above, 'where the patient happens to be an ordinary healthy person.' * * *

"The science of surgery has made wonderful progress, and surgical operations are not looked upon with the horror that they inspired in former years. It requires only ordinary resignation. It is true that sometimes operations prove fatal, but this is, it seems, seldom. As a matter of principle, one should follow the directions of a competent physician in a case as serious as plaintiff's.

"As the plaintiff has refused to undergo the operation, it must be considered that she has minimized her chances of recovering damages."

■ It is said that there is a difference between the rule that should be applicable in tort cases and that which should apply in compensation cases, but we are unable to see the distinction. In either case it is the duty of the injured party to minimize the loss. In Martin v. Wyatt Lumber Co., 4 La. App. 157, the Court of Appeal for the Second Circuit discussed the Donovan Case in connection with a claim for compensation in which it was contended that an operation should have been submitted to, and, with reference to the rule announced in the Donovan Case, said: "The same rule applies in cases arising under the workmen's compensation statutes."

Counsel for Crawford point to the following cases decided by courts of this state and in each of which the court refused to order the injured party to submit to an operation: Flanagan v. Sewerage & Water Board, 19 La. App. 154, 140 So. 83; Addison v. Powell Lumber Co., 1 La. App. 210; Bossier v. La. Oil Refining Corp., 3 La. App. 205; Martin v. Wyatt Lumber Co., supra; Wolf v. La. Milk Products Co., Inc., 8 La. App. 657; Reeves v. Dietz et al., 1 La. App. 501; O'Donnell v. Fortuna Oil Co., 2 La. App. 462; Hilliard v. Merkel Construction Co., 4 La. App. 40; Perkins v. Long Bell Lumber Co., 8 La. App. 403; Sybille v. Kelly-Weber Co., 10 La. App. 374, 121 So. 640; Bronson v. Harris Ice Cream Co., 150 La. 458, 90 So. 759, 760.

In each of the above cases the employer sought to compel the employee to submit to a surgical operation, and in each the refusal was sustained as reasonable. But a careful study of all does not lead to the conclusion contended for by counsel for plaintiff. In only one, O'Donnell v. Fortuna Oil Company, do we find the doctrine announced that under no circumstances can the court issue such an order as is sought here. In all the others the courts have said that all surrounding conditions and circumstances must be taken into consideration and that it must be determined, in the view of all such circumstances, whether or not the refusal to submit to an operation is reasonable or is arbitrary.

In fact, through all the other cases there runs the view that, where there is no substantial reason for refusal, the injured employee, who refuses to submit to the operation which will almost certainly prove successful and which will be attended by practically no danger of fatal results, must forfeit further compensation.

In Bronson v. Harris Ice Cream Co., the court held that the refusal was not unreasonable. We find the following in that opinion: "In view of the age of the plaintiff, and of the seriousness of the operation, requiring the

administration of an anæsthetic and in view of the natural (though unreasoning and, we may add, groundless) prejudice against the resorting to the Charity Hospital, we do not think that plaintiff's unwillingness to submit to an operation was entirely unreasonable."

We also find the following, which unmistakably recognizes that there may be cases in which the operation must be consented to as an alternative to the discontinuance of compensation payments: "We must recognize that such a thing might be as an injury curable by an operation so simple and unattended by risk that plainly the real cause of the disability would be not so much the injury as the not making use of the easy remedy at hand."

In Addison v. Powell Lumber Co., 1 La. App. 210, it was held that it was not unreasonable to refuse to submit because "an appreciable risk attends the operation."

In Reeves v. Dietz et al., 1 La. App. 501, this court, after setting forth many reasons which had prompted the employee to refuse an operation, said: "We conclude that under the circumstances of this case the plaintiff's refusal to submit to the operation proposed was not unreasonable."

In Bossier v. La. Oil Refining Co., 3 La. App. 205, the court found that "under the circumstances of this case * * * refusal to submit to an operation is not unreasonable."

In Hilliard v. Merkel Const. Co., Inc., 4 La. App. 40, the court discussed the circumstances of the case surrounding the injured party and said: " * * * The evidence in this case does not convince us that the proposed operation would be unattended with risk to plaintiff's life or health."

In Martin v. Wyatt Lumber Co., 4 La. App. 157, the court stated that: "It is true that our workmen's compensation statute does not specifically require that an injured employee shall submit to medical or surgical treatment; nevertheless it is well settled that an injured person must do what he can, within reason and safety, to minimize the damage. It has been so held in personal injury cases by all the courts, including the United States Supreme Court"—and, as supporting the above statement, the Donovan Case is cited.

We particularly call attention to the word "surgical," which appears in the above quotation.

In Wolf v. La. Milk Products Co., Inc., 8 La. App. 657, it was held that the refusal was not unreasonable for the following reasons: "The physicians, with some divergence as to the degree of risk, agree, that an anæsthetic sufficient to bring about involuntarily a complete relaxation of plaintiff's muscles, would be attended by appreciable risk to his life."

In Perkins v. Long Bell Lumber Co., 8 La. App. 403, the refusal to submit was held to be reasonable for the following reasons, which the court gave: "According to the preponderance of the evidence, the operation which the plaintiff wishes the defendant to undergo, may not stop the discharge of the calluses if performed, and will be attended by a very grave danger to plaintiff's life."

In Sybille v. Kelly-Weber Co., Inc., 10 La. App. 374, 121 So. 640, 641, there was considerable doubt as to whether the operation which was suggested would be successful, but all the surgeons agreed that "an operation of the kind is very serious."

In Flanagan v. Sewerage & Water Board, 19 La. App. 154, 140 So. 83, 85, we held that the injured party was justified in his refusal to submit to an operation. We said:

" * * * There is considerable doubt as to whether such an operation would be as free from danger as an operation should be, in order to permit courts to take upon themselves the responsibility of saying that injured persons should submit thereto.

"It may well be, as has been testified to, that, in the case of an otherwise normal healthy individual, an operation for hernia is not serious, and that in such case the chance of fatal result is very small indeed; but the sufferer here is shown to be the victim of chronic bronchitis and is subject to violent fits of coughing, and Dr. Roeling testified that, for this reason, 'I would not operate on him under existing conditions.' "

In addition to these Louisiana authorities, in each of which the court refused to order the injured party to submit to an operation as an alternative to the discontinuance of compensation payments, but in each of which the view was plainly implied that, where the operation suggested is unattended by risk and is practically certain of success, it should be submitted to, we find many authorities from other courts in this country and also some from the English courts holding that the duty to minimize loss requires that, in such cases, surgical treatment be accepted. In Donnelly v. Baird & Co., Ltd., 1 B. W. C., 95, it was said that:

" * * * I hold it to be the duty of an injured workman to submit to such treat-

ment, medical or surgical, as involves no serious risk or suffering, such an operation as a man of ordinarily manly character would undergo for his own good, in a case where no question of compensation due by another existed. * * *

" * * * I can see no general principle except this, that if the operation is not attended with danger to life or health, or extraordinary suffering, and if according to the best medical or surgical opinion the operation offers a reasonable prospect of restoration or relief from the incapacity from which the workman is suffering, then he must either submit to the operation or release his employers from the obligation to maintain him."

In 73 A. L. R. at page 1309, is found an interesting discussion of the question with which we are now concerned. A reading of the entire note leads to the inevitable conclusion that the general rule is that simple operations unattended by grave danger must be resorted to.

The horror which counsel expresses at the thought that a court may order a human being to submit himself to the surgeon's knife will be dissipated upon a realization of the fact that such an order as is requested here is an alternative one, and that the injured party, in any such case, is free, without rhyme or reason, to refuse to submit to surgical treatment, or, in fact, to submit to any treatment at all. The alternative is that compensation payments shall cease. In Reeves v. Dietz et al., supra, we said: "The law places the burden upon industry to repair as near as may be the damage it does to man as a member of society, a cog in the economic machine. It contemplates that the injured employee is the normal individual, desiring nothing so much as restoration to normal strength and usefulness, the God given right to work and that he will do nothing to create, continue or increase his disability by wilful or unreasonable conduct and thereby increase the burden upon society by reason of an unnecessarily prolonged disability due not to injuries received in the service of industry but to his laggard sense of his obligation to society."

We revert, then, to the proposition that this question rests upon a determination of whether the refusal is reasonable. We note here that the surgeons are practically in accord and that the chances of fatal result are so few as to be practically negligible. We also find that in 95 per cent. of such cases an operation produces a complete restoration to health and good physical condition

and that in probably 5 per cent. no cure is effected.

We also note, however, that there has already been one operation for this same hernia, and, though that operation was pronounced a complete success, there has been, according to our former finding, a recurrence of that same hernia, and we see in the testimony of the surgeons statements which show that, where there has been one operation for such a hernia, the chances for the recurrence are somewhat increased. It may well be that, because of the strong and robust condition of Crawford, a first refusal would have been considered unreasonable, but we cannot lose sight of the fact that there was the earlier operation, and we feel that the danger of fatal results, slight though it is, in conjunction with the fact that the first operation did not prove successful, gives to Crawford's refusal to undergo a second operation a tone of reasonableness which should form the basis of a decision in his favor.

In 73 A. L. R. at page 1315, we find cases in which the question of the reasonableness of refusing to submit to a second operation is discussed, and there we find it stated that: "In Indemnity Ins. Co. of N. A. v. Jones (1927; Tex. Civ. App.) 299 S. W. 674, it appeared that, after an employee had made complaint of his injuries, the insurance carrier recognized his claim and allowed compensation. At the request of the insurance carrier, or at least on the advice of its surgeon, the employee submitted to an operation for hernia. This operation was not successful, and on the trial of the case the insurance carrier requested another operation, which the employee refused. It was held that in so refusing the employee was within his legal rights, as it was not the intent of the law that the insurer could continue to experiment on the body of the employee against his wishes, on the expert testimony of physicians, no matter how eminent, that a second operation would be successful."

In the same note we find other cases, to wit, Massotti v. Newburgh Shipyards (1924) 210 App. Div. 538, 206 N. Y. S. 383, and Fife Coal Co. v. Cant (1920) 124 L. T. N. S. (Eng.) 545—H. L., subd. II d, in which it was held not unreasonable to refuse to submit to second operations, and we also see a reference to Perkins v. Long Bell Lumber Co., supra, decided by our brothers of the First Circuit, in which, according to the note: "It was held that an injured employee should not be required to submit to a third operation on his leg, where the preponderance of expert tes-

timony showed that the result of the operation was problematical and was attended by very great danger to the employee's life. And, in holding that the employee was justified in refusing such operation, the court also held that the employee's right to recover compensation under the Workmen's Compensation Act would not be impaired thereby."

We conclude, therefore, that though, in certain cases, it may be reasonable to require an employee to submit to an operation for a simple hernia, nevertheless, in the instant case, by reason of the fact that there was some danger of fatal result and that a first operation had been unsuccessful, the injured party's refusal to submit to an operation was not unreasonable.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, annulled, avoided, and reversed, and that there now be judgment in favor of Peter Crawford and against Tampa Inter-Ocean Steamship Company, Inc., dismissing the rule taken by Tampa Inter-Ocean Steamship Company, Inc., on February 27, 1934, at the cost of said Tampa Inter-Ocean Steamship Company, Inc.

Reversed.