**CRAWFORD v. TAMPA INTEROCEAN S. S. CO., Inc.** *

No. 15097.

Court of Appeal of Louisiana. Orleans.

Feb. 18, 1935.

J. A. Woodville, of New Orleans, for appellant.

Terriberry, Young, Rault & Carroll, of New Orleans, for appellee.

WESTERFIELD, Judge.

On November 27, 1933, Peter Crawford, a negro stevedore, obtained a judgment in this court (the lower court having dismissed his suit) ordering the Tampa Interocean Steamship Company, Inc., to pay him $20 a week for 400 weeks beginning May 29, 1932, as compensation for an injury (a ruptured or inguinal hernia) received in the course of his employment, subject to a credit of $170 previously paid. See 150 So. 875. An application was made to the Supreme Court for a writ of review, which was refused. On February 27, 1934, a rule was filed by the Tampa Interocean Steamship Company, Inc., in division A of the civil district court in which it was alleged that in compliance with the decree of this court all compensation due had been paid Crawford, and that mover desired a modification of the judgment as authorized by section 20 of the Compensation Law (Act No. 20 of 1914, § 20, as amended by Act No. 85 of 1926), for the reason that Crawford's disability could be cured in about eight weeks by means of a surgical operation, the expense of which mover was ready and willing to undertake, but that Crawford unreasonably refused to submit thereto. By judgment rendered March 23, 1934, the rule was made absolute and Crawford ordered to submit to the operation, and, in the event of his refusal, his employer, the Tampa Interocean Steamship Company, Inc., was ordered relieved of the necessity of making further weekly payments

---

*Rehearing denied March 18, 1935.

354

after eight weeks from the 31st day of March, 1934. From this judgment plaintiff obtained an order of appeal to this court in the following language: "It is ordered by the Court that Peter Crawford, plaintiff herein, be granted a devolutive and suspensive appeal and the judgment rendered in this cause on Friday March 23rd, 1934 and signed on Friday March 23rd, 1934, be returnable to the Court of Appeal on the 26th day of April, 1934 and that he be dispensed from prepayment of costs or furnishing security therefor as this suit is prosecuted under Act No. 156 of 1912 (Pauper Act)."

This court, on June 11, 1934, reversed the judgment of the lower court, and held that Crawford's refusal to submit to the operation was not unreasonable under the jurisprudence of this state, and dismissed the rule for modification of the judgment. 155 So. 409. An application for rehearing was made and in due course refused, whereupon the Supreme Court was applied to for a writ of review which, on August 3, 1934, was also refused. In the meanwhile, all compensation due Crawford was paid him as it accrued up to May 26, 1934, in accordance with the judgment of modification of March 23, 1934, and on August 3, 1934, following the refusal of the writ by the Supreme Court, a tender was made by the steamship company to Crawford of all installments due between May 26, 1934, and August 3, 1934, and at the same time it declared its willingness to continue to pay such compensation as Crawford might be entitled to under the judgment. This offer Crawford declined, and on August 6, 1934, filed a rule in division A of the civil district court in which it was alleged that "for no good reason or cause" the steamship company declined to pay Crawford compensation since May 26, 1934, and "that ten weeks have elapsed since they have failed to pay mover any compensation although demanded and requested to do so." A judgment was asked for under section 33 of Act No. 20 of 1914 (the Compensation Law), as amended by Act No. 38 of 1918, for the full balance due, or 269 weeks at $20 a week, or $5,920. By judgment rendered on October 19, 1934, the district court discharged this rule, and from that judgment this appeal has been taken.

Section 33 of the Compensation Law reads as follows: "Be it further enacted, etc., That in the event the employer against whom there has been rendered a judgment of Court awarding compensation in favor of any employee or his dependent should become insolvent or fail to pay six successive installments as they

become due, the installments not yet payable under said judgment shall immediately become due and exigible and the judgment shall become executory for the whole amount; provided, that if the employee or his dependent is adequately protected by insurance and receives payments thereunder this right shall not accrue."

The contention of counsel for Crawford is that in suspending payments of compensation after the granting of a suspensive appeal from the judgment of March 23, 1934, for a period of more than six weeks or until August 3, 1934, the date on which the Supreme Court refused a writ of review to this court, the steamship company rendered itself liable under section 33 for the immediate payment of the entire compensation due under the judgment of this court of November 27, 1933. It is pointed out that the section uses the words, "fail to pay six successive installments as they become due," without qualification, and that, therefore, it matters not what reason may be given by an employer or what motive may have actuated him in withholding payments; it is only necessary in order to incur the penalty invoked that he should "fail to pay." It is conceded that after the modification of the judgment by the district court and as long as the judgment of modification was effective defendant was not in default because, in declining to made further payments, it was not refusing to pay a judgment for the reason that the judgment, as modified, suspended payments eight weeks after March 31, 1934, and, consequently, the steamship company in stopping further payments was protected by the judgment as amended. Counsel contends, however, that when the order for the suspensive appeal was signed by the district court on March 28, 1934, its effect was to suspend the judgment of modification and to reinstate in authority our original judgment, and that there was then no excuse for withholding the weekly payments of compensation. Opposing counsel counters with the contention that the judgment of modification was not suspended by the appeal because the appellant, Crawford, who had instituted his suit originally in forma pauperis, could not obtain a suspensive appeal in that character, since the Pauper Act did not authorize anything but a devolutive appeal.

In the Succession of Wolfe, 180 La. 688, 157 So. 391, the Supreme Court held that an impecunious litigant could not obtain a suspensive appeal without giving bond. We quote the following from that authority:

"Act No. 260 of 1918, amending Act No. 156 of 1912, § 1, provides as follows:

" 'Where a person coming under the provisions of this act has been granted the right to prosecute or defend, or intervene in an action in the courts of this state and such parties shall feel aggrieved by the judgment which may be rendered against him in such action, such party shall have the right *in cases where devolutive appeals are allowed by law*, to take and prosecute a devolutive appeal from such judgment, all without the previous payment of any court cost or the giving of a bond for Court costs,' etc. (Italics by the court.)

"From a mere reading of the foregoing quotation from Act No. 260 of 1918, it is clear that appellant may lawfully prosecute his devolutive appeal, in forma pauperis, without the payment of costs or the giving of a bond therefor, because a devolutive appeal bond serves no other purpose than to secure the payment of court costs. This was the jurisprudence of the state prior to the passage of Act No. 260 of 1918, and that act did little more than to confirm by statute the then existing jurisprudence. See Beuhler v. Beuhler Realty Company, Inc., 155 La. 319, 99 So. 276, and the authorities therein cited in column 1, page 326, of 155 La., 99 So. 278.

"A suspensive appeal without bond is, however, quite a different matter. There is no provision of law which authorizes the granting of a suspensive appeal without bond, and it is at variance with the well-established jurisprudence of this state."

We held in State ex rel. Messina v. Cage, Judge, 152 So. 399, that where a sum of money was in dispute and the money in custodia legis the devolutive appeal authorized by the Pauper Act would operate as a suspensive appeal because, under the jurisprudence of this state, a cost bond was all that was required to support a suspensive appeal in such circumstances, and since the act relieved the pauper litigant from the necessity of furnishing a cost bond, all that was required for a suspensive appeal, a liberal construction of the act justified a holding that the devolutive appeal should operate suspensively.

In the present case there is no question concerning the distribution of funds in gremio legis, a situation which would afford adequate protection to all parties if security is given for costs. We are not prepared to say what bond would have been proper to have supported a suspensive appeal, because the procedure for the modification of a judgment under the Compensation Law is unique. In no instance that we know of is it possible to suspend the operation of a definitive judgment except by an action of nullity or injunctive process. If it be suggested that a cost bond would be all that could be required, it is obvious that an injustice might be done to an employer in the position of Tampa Interocean Steamship Company, the present defendant, who had been relieved of the necessity of paying compensation by a judgment of court, and that judgment suspended on a cost bond causing him to pay out $20 per week to a pauper plaintiff pending disposition of the matter in the appellate courts without any hope of recovering should the judgment ultimately be affirmed.

The order of the appeal obtained by Crawford allowed a "devolutive and suspensive appeal" without bond. There is no authority for the granting of a suspensive appeal without bond, consequently, the appeal which plaintiff took from the judgment of modification was devolutive only and did not suspend the judgment. Succession of Keller, 39 La. Ann. 579, 2 So. 553; Bank of America v. Fortier, 27 La. Ann. 243.

If it be said that this view is inconsistent with our opinion in State ex rel. Messina v. Cage, where we held that a devolutive appeal would operate suspensively under the circumstances mentioned in that case, we answer that in the interest of a liberal construction of remedial legislation we went as far as we could to sustain the appeal. We find no similar consideration in the present case where we are considering the application of a penal clause under a rule which requires a strict construction, for forfeitures and penalties are not favored in law. We should not apply the penal provision of the statute unless compelled by clear and positive mandate of law.

Our conclusion is that section 33 of the Compensation Law has no application to this case because the failure to pay the compensation under the original judgment was in strict accordance with a subsequent judgment modifying our original decree, which was in full force and effect because not suspended by the devolutive appeal until overcome and supplanted by the finality of the judgment of this court following the refusal of a writ of review by the Supreme Court. Under the circumstances, it is unnecessary to consider the other questions raised involving the interpretation of section 33.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.

JANVIER, Judge (concurring).

I agree with all that is said by my associates, but I believe that the same result would have been sooner and more logically reached by holding that section 33 of Act No. 20 of 1914, as amended by Act No. 38 of 1918, has no application where the compensation payments which have been discontinued were being made under a judgment requiring weekly payments during the period of disability. There can be no doubt that in Dixon v. King, 178 La. 1, 150 So. 385, the Supreme Court of Louisiana so held, for in that case appears the following:

"The relator contends also that section 33 of the statute does not authorize the court to declare a judgment executory for the whole amount which would be payable in 150 weeks, where the judgment itself is for weekly installments payable only during the period of disability, and provides for merely a maximum limit of 150 weeks. * * * That is an accurate interpretation of the statute. The whole amount of a judgment for compensation at $12.51 per week during the period of disability is not 150 times $12.51, merely because the judgment contains a maximum limit of 150 weekly payments. In other words, the statutory limitation of 150 weeks does not create the presumption that the whole amount of a judgment for compensation to be paid in weekly installments during the period of disability will be 150 times the amount of one weekly installment.

"It is argued on behalf of Dixon that, if section 33 of the statute does not apply to a judgment for compensation to be paid in weekly installments during the period of disability, this section of the statute cannot apply to any judgment for compensation, because, Dixon's attorney contends, all judgments for compensation are limited to the period of disability, as well as to the maximum period stated in the statute. But that is a mistake, because there are many cases where the statute provides for the payment of compensation for a definite number of weeks. For example, in allowing compensation under subdivision (d) of subsection 1 of section 8 of Act No. 38 of 1918, and under the corresponding subdivision of Act No. 242 of 1928, the court must give judgment for the compensation to be paid during a definite number of weeks, and not merely during the period of disability. That is true also where compensation is allowed under subdivision (e) of subsection 1 of section 8 of the Act of 1918, which subdivision corresponds with paragraph 16 of subdivision (d) of subsection 1 of section 8 of the Act of 1928. And that is the case also where compensation is allowed to a dependent for an injury causing the death of an employee.

"Considering that section 33 of the statute provides for something in the nature of a penalty, it ought to be construed strictly. Accordingly, it cannot be said that the whole amount of the judgment which Dixon obtained against King was 150 times $12.51."

It will not do to distinguish the Dixon Case on the ground that in the case at bar the judgment for compensation did not limit the weekly payments to the period of disability, for, while it is true that the judgment did not in words contain such limitation, it is clear that it should have contained it, because the judgment was rendered as the result of disability and it was rendered under a statute which gave to the court no authority to render a judgment for compensation for disability requiring weekly payments except "during the period of disability."

The judgment was rendered under paragraph (b) of section 8 of the Act of 1914, and this paragraph provides that the compensation awarded shall be payable "during the period of disability."

A judgment rendered under a specific statute must be construed in the light of that statute, and, if so construed, the judgment which is involved here will immediately appear to be one not for 400 weekly payments, but for weekly payments "during the period of disability, not, however, beyond 400 weeks." If the judgment could be construed as requiring, without condition or limitation, that payments be made for 400 weeks, then there was no jurisdiction to render such a judgment because the right or jurisdiction to render judgments in compensation cases is granted and is limited by the statute, and the statute limits the right to recovery to the period of disability. There is no jurisdiction "ratione materiæ" to render a judgment which exceeds the authority granted by the statute. There are authorities to the effect that, if such a judgment is rendered, it is an absolute nullity. There are others to the effect that such a judgment is merely voidable. But, whether it is an absolute nullity, or is merely voidable, it is a judgment, if so construed, which should and could have been annulled. We, therefore, should so construe it as to make it a valid judgment and not so as to make it void, or, at best, voidable.

Thus, whether it be upon the theory that a judgment must be construed in the light of

the statute under which it is rendered, or upon the theory that a judgment rendered under a particular statute may not exceed the authority of the statute, the result would be the same. In either case the judgment must be held to be one requiring payments only during the period of disability.

Such a judgment is not affected by section 33 of the statute. Dixon v. King, supra. The majority opinion of this court in Dixon v. King may be found in 145 So. 558. See, also, dissenting opinion, 146 So. 703.

If section 33 has no application, then the contention which I have discussed is in the nature of an exception of no cause of action and should have been considered before the questions otherwise presented.

I concur in the majority decree for the reasons which I have given, as well as for those appearing in the majority opinion.