No.——

First Circuit

———

WOLF v. LOUISIANA MILK PRODUCTS
CO., INC.

———

(April 11, 1928. Opinion and Decree.)

———

(*Syllabus by the Editor*)

1. **Louisiana Digest—Master and Servant —Par. 160(a).**

The refusal of injured employee to undergo a general anaesthetic for the purpose of relieving the condition of his knee by an operation fraught with danger will not affect his right to recover compensation under the Workmen's Compensation Act No. 20 of 1914, as amended.

2. **Louisiana Digest—Master and Servant —Par. 159, 160(j).**

Where the evidence denotes a reasonable certainty that injured employee is permanently disabled to do work of any reasonable character due to an injury to his knee he will be given compensation under the Workmen's Compensation Act No. 20 of 1914 as amended, for sixty-five per cent of his wages for four hundred weeks not to exceed the period of disability.

3. **Louisiana Digest—Master and Servant —Par. 154, 159.**

Where injury to employee's knee renders the leg so useless that he is apparently permanently disabled he is entitled to compensation under Sec. 8, Subsection (b), of the Workmen's Compensation Act No. 20 of 1914 as amended; Sec. 8, Subsection (d), stating that "The permanent total loss of the use of a member shall be equivalent to the amputation of a member" having no application to this case.

Appeal from the District Court, Parish of East Baton Rouge. Hon. George K. Favrot, Judge.

Action by Lewis Wolf against Louisiana Milk Products Co., Inc.

There was judgment for plaintiff and defendant appealed.

Judgment amended and affirmed.

Sachse and Darsey, of Baton Rouge, attorneys for plaintiff, appellee.

Taylor, Porter, Loret and Brooks, of Baton Rouge, attorneys for defendant, appellant.

ELLIOTT, J. Lewis Wolf, an employee of Louisiana Milk Products Co., Inc., on the 10th of July, 1926, while engaged in doing the work he was employed to do, fell on the floor of the ice cream vault and injured his right knee.

The injury was a bad one. Plaintiff alleges in his petition that he has not been able to walk since, except on crutches, a period of about nine months, counting from the time of the injury to that of the trial. That because of his injury he is totally incapacitated to do work of any reasonable character. That his injury is incurable and produces in him a permanent disability. That he was receiving as wages at the time of the injury $125.00 a month. He claims compensation at sixty-five per cent of his weekly wages, or $18.74 a week for a period of four hundred (400) weeks.

Defendant denies liability and alleges that plaintiff is a malingerer, and alternatively, if it is liable for any amount, that it is only for sixty-five per cent of his weekly wages for two hundred weeks.

There was judgment in favor of the plaintiff for sixty-five per cent of his

weekly wages, or $18.74 a week, for the period of his disability, not to exceed four hundred (400) weeks, subject to twenty-six weeks already paid.

Defendant appeals.

The main dispute is as to the gravity of the injury, and whether plaintiff is permanently disabled, as he contends.

The case was tried in the lower court on June 9, 1927, about eleven months after the injury. Plaintiff testified that his knee still hurt him sometimes at night to the extent that he was unable to rest.

That following his injury he was confined to his bed at home for about eighteen days. That he then, on the instruction of the physician employed by defendant to treat him, went to the Hospital of Our Lady of the Lake, for an operation on his knee, and was in bed there for a couple of days. That he then, on the instruction of said physician, returned home and stayed in bed for about thirty days under treatment of the physician employed to treat him by defendant. That he can not use his right leg at all, can not bend his knee, and that it can not be bent except by force, which causes him great pain. That he had accepted and followed the treatment and instructions given him by each of the physicians employed to treat him. That the use of his leg has been entirely lost; that he is unwilling to submit to an anaesthetic because he fears to do so.

The evidence shows that defendant employed a physician to treat plaintiff at the time he was first injured. That this physician had plaintiff's case in charge for two months or more, and that no other physician examined him until after he had reported him to defendant as a permanent disability.

This physician testified that on calling at plaintiff's home a couple of days after the injury he found his knee enormously swollen. That as the swelling continued he had plaintiff removed to the Hospital of Our Lady of the Lake, in Baton Rouge, and obtained several 30 cc. syringes full of a pinkish, straw colored fluid from his knee joint by aspiration, which he believes resulted from rupture of the knee capsule and the flow of the fluid into the tissues around the joint. That the removal of this fluid did not relieve plaintiff; his condition, however, slowly improved, the knee joint remaining very tender and painful. That his knee finally lapsed into a chronic condition which he treated for several months by every means he knew of, without success. He finally referred plaintiff to another physician for another kind of treatment which was also without effect. That the muscles of plaintiff's leg had apparently atrophied somewhat from disuse of the thigh and calf. That there is no injury to the bone. That plaintiff's leg stiffened gradually, finally becoming inflexible, which condition he saw coming on, and informed plaintiff that such would be the result. That the pain of which plaintiff complained is real and not assumed. That plaintiff suffered from chronic arthritis of the right knee, due to his injury, and will not, in his opinion, substantially improve, but will be a cripple for the rest of his life, suffering some pain at intervals. That plaintiff may get so he can walk and may not. That flexation of his knee by force may be the means of stirring up infection, if any is present at the time, and cause serious trouble. That having treated plaintiff so long and studied his case so closely it was not necessary for plaintiff to submit to an anaesthetic in order for him to properly classify his condition, and he had so informed plaintiff. That he had reported plaintiff's condition correctly to the de-

fendant. His report to the defendant that plaintiff's injury was permanent is in the record dated July 10, 1926.

A witness testified that plaintiff had been a steady worker and was industriously disposed.

The Court, on motion of the defendant, about two weeks after the suit was filed, appointed a bone specialist to examine plaintiff's knee. This physician made an examination and reported to the Court that he found no injury to the bone. His report, received without objection, states that plaintiff held his knee at the time, at an angle of about 175 degrees, with the pattella apparently fixed. That by diverting plaintiff's mind he was able to flex the knee to an angle of about 160 degrees and that when plaintiff was not thinking about it the pattella was perfectly free. That plaintiff was at the time incapacitated for doing any work which necessitated walking or standing. That most of the stiffness in plaintiff's knee, was, in his opinion, due to voluntary muscular spasm, and was not permanent but would subside under treatment.

He was not sure of the above, because in order to be sure, he says, he would have to examine plaintiff's knee under an anaesthetic. He gave it as his belief that if plaintiff would not submit to an anaesthetic for the purpose, that his condition was seventy-five per cent voluntary.

This report is prima facie of the fact therein stated. Act 20 of 1914, Section 9, amd. Act. 38 of 1918.

Two other physicians in the employ of the defendant examined plaintiff; one during the month of October and the other during November, 1916. These examinations were approximately three and four months after the injury. One of the phy-sicians testified that he had obtained about thirty degrees of flexion of the knee under pressure, the plaintiff complaining of pain under the pressure. That at the time of his examination he noticed mark spasm of the muscles of plaintiff's thigh. He did not consider plaintiff a permanent disability at the time, and told him to throw his crutch away and get a stick, and to get a little confidence in himself.

At the time of the trial he saw plaintiff's leg examined by other physicians and his former opinion was not changed.

The other physician examined plaintiff and treated him about three months. The treatment did not terminate until five months before the trial. This physician testified that on his first examination he obtained a knee flexion of about twenty or twenty-five degrees, the plaintiff holding his leg rigid and complaining that the flexion caused him pain. He was satisfied that plaintiff did not try to use his knee as he was directed to do, and in that way did not co-operate with him.

He wanted plaintiff to submit to an anaesthetic at the time he was treating him in order that he might satisfy himself whether his knee was really inflexible, and if found to be so from disuse, to flex and commence a movement, but plaintiff refused. It was his opinion that plaintiff was not the permanent disability that he pretended to be.

Both these physicians gave it as their opinion that an anaesthetic was the best and surest way to determine whether plaintiff's leg was really inflexible, and if found to be so from disuse, to flex and commence movement.

A witness testified that some months after the injury he saw plaintiff walking on the streets of Baton Rouge without limping and without any aid except a

walking stick, but it appeared as if his leg was a little stiff. He believed that he had seen him doing this more than once.

The physicians, with some divergence as to the degree of risk, agree, that an anaesthetic sufficient to bring about involuntarily a complete relaxation of plaintiff's muscles, would be attended by appreciable risk to his life. That even if the risk to life be safely passed, there would still remain some uncertainty as to consequences. The knee might be in fact inflexible and remain in that condition. Then again, if the stiffness was found to be due to disuse, the flexion by force might result in injurious consequences of a permanent nature, the result of which might be beyond the ability of the physicians to control.

In such a situation it has been held in a number of cases, that the refusal of an injured party to undergo a general anaesthetic for the purpose of relieving his condition by an operation, was not unreasonable. That under the law an injured party can not be compelled to submit to it as a pre-requisite to the award of compensation. See Bronson vs. Harris Ice Cream Co., Inc., 150 La. 455, 90 So. 759; Addison vs. Powell Lumber Co., 1 La. App. 211; Reeves vs. Deitz, 1 La. App. 501; O'Donnell vs. Fortuna Oil Co., 2 La. App. 462; Bossier vs. Louisiana Oil Refining Co., 3 La. App. 205; Hilliard vs. Merkel Construction Co., 4 La. App. 40; Martin vs. Wyatt Lumber Co., 4 La. App. 157; and J. A. Rodriguez vs. Standard Oil Co. of Louisiana, this day decided.

It is therefore necessary for us to determine the question of liability as best we can from the evidence found in the record, without the aid of an examination of the plaintiff under an anaesthetic.

Looking at this question, it appears to us that the physician who first treated plaintiff and had sole charge of his case for two months or more immediately after his injury, is in a better position to judge of the gravity of plaintiff's condition than anybody else.

During the trial plaintiff removed his clothing and showed his leg to the attending physicians and to the Court. The Court saw his leg and knee and saw the examinations conducted by some of the physicians. Upon the whole the evidence in the case leaves a reasonable certainty of conviction that plaintiff is a permanent disability as to work of any reasonable character, and is unable to get about without the use of a crutch, and will be so, possibly for the balance of his life.

Defendant contends that even if plaintiff has lost the use of his leg, he is not on that account entitled to recover but sixty-five per cent of his wages for 175 weeks, on the ground that "a permanent total loss of the use of a member is equivalent to the amputation of a member."

Under the law, subsection (b) of Sec. 8 of Act 20 of 1914 (amd. Act 216 of 1924 and Act 85. of 1926) is not controlled by subsection (d), when under the facts an injured knee renders the leg so useless and cumbersome that it is necessary for the injured party to use a crutch in order to get about.

In O'Donnell vs. Fortuna Oil Co., 2 La. App. 462, the Court, on page 465 illustrating, said:

"If a laborer gets his foot cut off he would be entitled to receive compensation under the statute equal to sixty-five per cent of his wages for one hundred and twenty-five weeks; whereas if he gets his foot crushed it may remain sore and painful during the balance of his life, and render him unable to work, except on

crutches, thereby totally disabling him to do manual labor of any kind. In such case he would receive compensation during his disability.

"There is no injustice or inequality in that. If the foot is cut off, it is out of the patient's way and he is left free from pain and in a position to use a substitute, as many men do.

"It is infinitely better for a man to have his leg or arm removed entirely from his body than for it to be paralyzed or injured and have to remain attached to the body as a constant perpetual hamper and menace to his activities. True, the surgeon's knife might relieve the patient of his burden, but who has the right to say to him that he must undergo an operation, fraught as operations always are with more or less danger."

The statute on the subject of compensation provides that compensation obtained by means of a false statement wilfully made, ceases upon conviction for having done so. It also provides that the employer condemned to pay compensation may, upon a proper showing, have the judgment modified after the lapse of time thereby prescribed. See Sections 20 and 37, Act 20 of 1914 (amd. Act 85 of 1926).

It is our conclusion that the evidence does not warrant us in holding that the judgment appealed from is erroneous.

Judgment affirmed, defendant and appellant to pay the costs in both courts.

## ON REHEARING

ELLIOTT, J. Plaintiff's injury is limited to the use of his leg. In James vs. Spence & Goldstein, 161 La. 1108, 109 So. 917, the Supreme Court held that where only one member is involved in an injury, that Act 20 of 1914, Section 8, Subsection (d) (amd. Act 43 of 1922), to the effect that "the permanent total loss of the use of a member shall be equivalent to the amputation of a member" does not permit of the award of a greater compensation than that fixed by the law when amputation

has taken place. And it seems from the language used in the opinion that a greater compensation than that fixed for the loss of the use of a member is not permissible under the law as it stands, even though there may exist a disability greater than would have been the case had amputation taken place. In this case the judgment appealed from classes plaintiff as a permanent total disability and fixes his compensation at 65 per cent of his weekly wages during the period of disability, not to exceed four hundred weeks. We hold that the evidence in the case leaves a reasonable certainty of conviction that the plaintiff is a permanent disability as to work of any reasonable character, unable to get about without the use of a crutch, and possibly would be for the balance of his life, and we accordingly affirmed the judgment appealed from.

The decision was in harmony with the previous jurisprudence which prevailed in the Courts of Appeal, First and Second Circuits, to the effect that it was not the intention of the Legislature by the enactment mentioned, to deny to an injured party the compensation proper to the situation in which the injury received had left him. See Bryant vs. Texas Pipe Line Co., 1 La. App. 42; Wilson vs. Dubach Mills Co., 2 La. App. 249; O'Donnell vs. Fortuna Oil Co., 2 La. App. 462; Davis vs. Gillis, 2 La. App. 567; Franklin vs. Ernest Roger Co., 2 La. App. 764; Chandler vs. Oil Fields Co., 2 La. App. 778, etc.

Defendant contends that as plaintiff's injury involves the loss of the use of but one member, his leg, that he can not under the language quoted from sub-section (d), be allowed a longer compensation than is provided for, had his leg been amputated, and that the allowance of compensation for the period provided for under subsection (b), is not in harmony with the

decision of the Supreme Court in the case above cited. We find that a lack of harmony does exist between the decisions of this Court and that of the Supreme Court, as to the period of compensation to which the plaintiff is entitled and we, therefore, place our decision in line with that of the Supreme Court. The compensation to which plaintiff is entitled under the law is that fixed by Act 216 of 1924.

Our former opinion and decree, and the judgment appealed from, are therefore amended and corrected, and plaintiff's compensation is now fixed at 65 per cent of his weekly wage of $18.74 for a period of two hundred weeks instead of as originally ordered. The period of payment to commence July 10, 1926, and be credited with twenty-six weeks following said time of commencement, and as thus amended and corrected our original opinion and decree herein is reinstated and made the final judgment of this Court.