No. 717

First Circuit

PLUMLEE v. CALCASIEU SULPHATE PAPER CO.

(March 3, 1931. Opinion and Decree.)
(May 5, 1931. Rehearing Refused.)

Julius T. Long, of Shreveport, attorney for plaintiff, appellant.

Thornton, Gist & Richey, of Alexandria, attorneys for defendant, appellee.

ELLIOTT, J. Randolph Plumlee, an employee of Calcasieu Sulphate Paper Company, Inc., while performing services for the defendant, arising out of and incidental to his employment, was severely injured. The injury is alleged to have occurred in catching a heavy roll of paper, falling, or about to fall, in defendant's paper mill on August 17, 1928. Plaintiff alleges a number of injuries and disabilities sustained, all very serious, resulting from said accident. Those in support of which plaintiff testified are, injury to the nerves, ligaments about the abdomen, injuries to the spinal column and hips, the bones and joints of the spine and hips, hernia in both right and left sides, constant pain and suffering and weakness in the hernial regions, to the extent that he can hardly get about or out of bed; that on or about October 2, 1928, defendant had a physician to perform an operation upon him for the hernia on his right side; that there is constant pain in the area where the operation was performed, etc.

He alleges that he was being paid by defendant at the time of the accident a daily wage of $3 a day, or $18 a week; that said injury received in defendant's service has produced in him a permanent total disability to do work of any reasonable character. He claims of defendant, compensation at the rate of $11.70 per week for a period of 400 weeks; that defendant paid him part of the compensation due him for 18 weeks; and then quit, refusing to make any further payments.

Defendant in the first part of its answer denies that plaintiff was employed by it and injured in its service, but this denial is followed by admissions in its answer that it became aware that plaintiff had sustained a hernia as alleged in article 5 of his petition. Defendant further alleges in its answer that on October 2, 1928, it had plaintiff operated on by its physician for hernia on the right side, and had paid plaintiff compensation for 19 5/6 weeks at the rate of $9.75 per week on said account; that plaintiff had entirely recovered from said operation, and prayed that his demand be rejected.

From a judgment rejecting his demand, the plaintiff appealed.

The averments in defendant's answer amount to an admission that the plaintiff Plumlee was by it employed to work in its paper factory, and while so engaged accidentally sustained a hernia on the right side of his hernial region; that defendant had him operated on, for said hernia, by its physician, and paid him compensation on said account for 19 5/6 weeks, at the rate of $9.75 per week. Defendant avers that plaintiff has recovered from said operation. All the other averments in plaintiff's petition are denied.

Defendant's answering admission restricts the dispute to the question whether plaintiff received, as a result of the accident mentioned, a hernia on the left side of his hernial region, injury to the muscles, nerves, and ligaments of his abdomen, in his spinal column and hips, to the bones and joints of his spine and hips, and suffers pain, discomfort, and weakness in his left hernial region to the extent that he can hardly get about or out of bed, producing in him a permanent total disability to do work of any reasonable

672

character. The amount of compensation, if plaintiff is entitled to anything further than the amount paid him, is also a matter of dispute.

Plaintiff alleges that he was being paid at the time of his injury a weekly wage of $18 per week. On the trial he testified that he was receiving 25 cents an hour and working thirteen hours a day. If this was true, and plaintiff worked six days a week, he was in fact being paid more than he claims to have been getting, but we hold that he is bound by the averments in his sworn petition.

Plaintiff, speaking of the time he was in the hospital and in charge of defendant's physician, says:

"In my right side there was a bump and my left side was hurting me and the doctor told me, if I would be real quiet and lie on my back and elevate my feet, he didn't think they would have to operate on my left side.
"Q. Who told you that?
"A. Dr. Allums."

This testimony was given by the plaintiff in open court on the trial of the case September 23, 1929. Dr. Allums' testimony had been taken in Shreveport on September 19, 1929, and was offered in evidence by the plaintiff in opening the trial. Dr. Allums testified that Dr. Mangum was in charge of the hospital in which the plaintiff was operated on, and that he (Allums) had been plaintiff's regular family physician, and had known plaintiff for 3 or 4 years; that he operated on plaintiff for hernia, he was not absolutely sure that it was on the right side, but thought it was on the right side; that plaintiff had no other physical trouble that he knew of, except some shin ulcers; that plaintiff did not complain of any other physical disability or injuries at the time, and he did not treat him for any other.

"Q. Did you know of his ever having any other physical disability besides this hernia?
"A. I don't recall any.
"Q. Did he ever complain to you of the back injury or of the nerves?
"A. He did not."

Dr. Allums' testimony having been taken before the trial, this testimony of the plaintiff as to his condition in the hospital while under defendant's phsyician's care, "In my right side there was a bump and my left side was hurting me and the doctor told me, if I would be real quiet and lie on my back and elevate my feet that he did not think they would have to operate on my left side," given by the plaintiff while putting his case before the court in chief, called for contradiction on the part of the defendant, if untrue. Because, if the statement was true, then defendant's physician, Dr. Allums, was well aware that there was trouble in plaintiff's left hernial region at the time he was in the hospital, regarded it as an injury sustained in the same way that the hernia for which he was operated on was produced, discussed the matter with the plaintiff, and advised him as to the course to pursue in an effort to avert an operation on account of same. Dr. Allums' testimony, which had been offered in evidence by the plaintiff at the time he made this statement, cannot be regarded as a denial of the truth of plaintiff's quoted statement, because Dr. Allums did not testify with reference to such a matter. Plaintiff made the statement at a time, when, if untrue, defendant could have called on the court for time in which to take the testimony of Dr. Allums for the purpose of showing that it was, but no such request or effort was made to show by Dr. Allums that the conversation did not take place. Plaintiff's testimony on the subject is supported by the testimony of Dr. Cassidy, taken at

Shreveport at the same time that of Dr. Allums was taken and introduced in evidence at the commencement of the trial. Dr. Cassidy, on the staff of the Charity Hospital at Shreveport, examined plaintiff on February 27, 1929, some 6 or 7 months previous to the trial of the case.

The testimony of Dr. Cassidy is not so much in the form of an opinion as it is the positive assertion of physical facts found. He says that, at the time he examined the plaintiff, he found his left hernial ring slightly dilated; that the situation there was not normal, describing the condition as an incomplete hernia, capable of producing the pain and general disability of which the plaintiff complains. His testimony lends support to plaintiff's testimony that his condition, found to exist there, results from, and has existed since, the accident which produced the hernia in his right side.

Dr. Hargrove examined plaintiff on the day of the trial at the same time as was done by Drs. Mangum and Rand. Dr. Hargrove testified to finding a condition in plaintiff's left hernial region that was not normal, describing same as an incomplete hernia, the injury capable of producing the pain and weakness of which plaintiff complains. Drs. Cassidy and Hargrove examined plaintiff at different times, and did not hear each other testify, but their findings are almost exactly alike. Dr. Hargrove's testimony lends support to plaintiff's testimony that his condition found to exist there results from, and has existed since, the accident which produced the hernia in his right side.

Dr. Mangum, referring to the time when plaintiff was brought to the hospital, says:

"Q. What did he come to the hospital for?
"A. With a pain in his side and I examined him and found a hernia on his right side.
"Q. At that time did you examine his left side?
"A. Yes, sir.
"Q. Did you find a hernia there?
"A. No, sir.
"Q. Did he complain of any other injuries then?
"A. No, sir."

He then testified that he had examined plaintiff on the day of the trial for a slight hernia on his left side and did not find any. He gave it as his opinion that plaintiff did not have an inguinal hernia on either side. He found no other injuries, testified that plaintiff had recovered from the operation which had been performed, and that he knew of no reason why he should not be engaged in manual labor. Dr. Rand examined plaintiff on the day of the trial. He had had large experience with hernia. He says, referring to his finding in plaintiff's left hernial region, "that the left side of the ring was about normal in size. I do not think any hernia exists." He found no injuries, and considered plaintiff able to perform manual labor.

As Drs. Mangum and Rand gave their testimony after that of Drs. Cassidy and Hargrove had been introduced, and do not directly contradict the findings of the latter that plaintiff's condition in the left hernial region 's not normal, and that plaintiff has an incomplete hernia there, capable of producing the pain and weakness of which he complains, a demarcating line exists between the testimony of Drs. Allums, Mangum, and Rand on one side and that of Drs. Hargrove and Cassidy on the other in the matter of their findings.

If Drs. Mangum and Rand had intended to contradict Drs. Cassidy and Hargrove in the matter of their findings that plaintiff's condition in his left hernial region was not normal, that he had an incom-

plete hernia, which might develop into a hernia, and which in its present state was capable of causing him the pain and weakness of which he complained, as they followed them on the stand, it seems to us that the contradiction would have been stated in explicit and pointed terms. As it was not done, it is a reasonable assumption that no real difference existed between them in regard to the existing condition in plaintiff's left hernial region. It appears, from the testimony on the subject, that Drs. Allums, Mangum, and Rand can in fact say that under their testimony, the condition existing in plaintiff's left hernial region as testified to by Drs. Cassidy and Hargrove is not inconsistent with their findings that no hernia exists there. Therefore, taking the testimony as a whole and giving to it all the effect which it should justly receive in the case, it seems to us that the plaintiff has established his claim to injury in his left hernial region and to pain and weakness there, resulting from the accidental injury alleged in his petition, with the certainty required by law.

The law Act No. 20 of 1914, sec. 18, subd. 4 (amended by Act No. 85 of 1926) provides that:

"All findings of the fact must be based upon competent evidence, and all compensation payments provided for in this act, shall mean and be defined to be for injuries and only such injuries as are proven by competent evidence, of which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself."

Section 38 (amended Act No. 38 of 1918) contains further provisions defining the meaning of the word "accident" as used in the Employers' Liability Act. The proof in our opinion satisfies these requirements. A man must be regarded as disabled from performing manual labor of any reasonable kind, sufficient to earn his living, who suffers pain and weakness at all times, such as we conclude from the evidence that the plaintiff suffers and feels. He is therefore entitled to compensation during the period of his disability, not, however, beyond three hundred weeks. The evidence supports the claim of the plaintiff that he was earning at the time of his injury a weekly wage of $18 per week. The plaintiff is entitled to be paid 65 per cent of this weekly wage, or $11.70 per week, during the time stated.

The judgment appealed from being in our opinion contrary to the law and the evidence, for the reasons stated, the judgment appealed from herein is now annulled, avoided, and set aside, and it is now ordered, adjudged, and decreed that the plaintiff, Randolph Plumlee, have judgment for compensation against the defendant Calcasieu Sulphate Paper Company, Inc., for the period of his disability, not exceeding three hundred weeks, at the rate of 65 per cent of a weekly wage of $18 per week, the sum to be paid being $11.70 per week, less payments at the rate of $9.75 per week for 19 5/6 weeks received; the compensation to commence on August 24, 1928, and to continue each week thereafter for the time stated; each weekly payment to draw legal interest from the time it was due until it has been paid. The weekly payments made and to be credited, to be applied commencing with the first week and to be credited each week thereafter for 19 5/6 weeks. Only the balance due for said weeks during which payments are to be credited is to bear interest; defendant and appellant to pay the costs in both courts.