### No. 14,113
### Orleans

___

## FLANAGAN v. SEWERAGE & WATER BOARD

___

(March 7, 1932. Opinion and Decree.)

___

J. A. Woodville, of New Orleans, attorney for plaintiff, appellee.

Gus A. Llambias, of New Orleans, attorney for defendant, appellant.

JANVIER, J. Plaintiff claims that, as the result of straining while trying to prevent the overturning of a paint container, he sustained a double (right and left) inguinal hernia, and, asserting that he is totally and permanently disabled and that the said injuries resulted from accident occurring during his employment and arising therefrom, he asks for judgment in compensation for four hundred weeks, at the rate of $14.60 per week, subject to a credit for amounts already voluntarily paid him.

Defendant does not deny that the occupation in which plaintiff was engaged was within the protection of the compensation laws of Louisiana (Act No. 20 of 1914, as amended), but maintains that the evidence is not sufficient to show that the hernia, from which plaintiff is conceded to be now

suffering, resulted from the accident, and that, regardless of whether the hernia resulted from the accident, plaintiff has no right to claim further compensation because of his refusal to undergo an operation, which operation, defendant asserts, would effect a permanent cure and entirely remove the present disability.

The evidence as to the happening of the accident is meager, but we find it sufficiently well established that what plaintiff says is true, and that he was injured while striving to prevent the overturning of a paint container. There is some dispute as to whether he called it to the attention of his superior at the time, and it is argued by defendant, in contending that he did not do so, that his failure is evidence of the fact that he, in truth, did not receive the injury, and that the accident, as described by him, did not occur.

It cannot be denied, however, that he at once visited the physician designated by defendant, and that that physician found him to be suffering from "right and left inguinal hernias."

We attach no importance to the fact that plaintiff claims that the accident occurred in October, 1930, whereas the truth seems to be that it really took place on August 14, 1930, because the date was of no particular importance and there was nothing to fix definitely in plaintiff's mind the exact time at which it occurred. The physician's records prove the true date, and those same records, beyond any possible doubt, show also the physical defects from which plaintiff was at that time suffering.

That he had not been suffering from this condition previously is indicated by the fact that he was examined by the same physician of defendant at a time prior to the injury, and was found to be in perfect

condition. Furthermore, the evidence shows that he had been a motorman for the local street car company for some 25 years previously, and it is well known that motormen must spend most of their time during working hours on their feet, and that such an injury, had it existed, would have made that impossible.

While it is true that no estoppel to deny liability can result from the fact that payments of compensation were made, it is sufficient that, for thirty weeks, plaintiff was paid compensation by defendant, and that his right to such payments was never questioned until defendant's counsel became convinced that an operation should be resorted to and would be successful. Mr. Moffat, secretary of defendant, testified that it was only on advice of counsel that the compensation payments were discontinued.

The record convinces us, as it did the district judge, who rendered judgment for plaintiff as prayed for, subject to a credit for payments for 30 weeks, that the accident occurred and that the hernia now complained of resulted.

But it is contended that, even if it be true that the present condition resulted from accident arising out of and in the course of plaintiff's employment, nevertheless, an operation would cure plaintiff and remove the disability, and, if so, his continued inability to work results not from the accident, but only from his refusal to submit to such operation. In a syllabus written by the Supreme Court in Donovan et al. v. N. O. Ry. & Light Co., 132 La. 239, 61 So. 216, 48 L. R. A. (N. S.) 109, is found the following:

"Where one has been injured, but is advised by competent physicians that the injury can be remedied by an operation that is ordinarily not dangerous, but refuses to submit to the operation, she is not minimizing her damages, and cannot recover for the sufferings which would be avoided by the needed operation. It is incumbent upon the injured person to submit to reasonable treatment, and to follow the advice of competent physicians."

But here there is considerable doubt as to whether such an operation would be as free from danger as an operation should be, in order to permit courts to take upon themselves the responsibility of saying that injured persons should submit thereto.

It may well be, as has been testified to, that, in the case of an otherwise normal healthy individual, an operation for hernia is not serious, and that in such case the chance of fatal result is very small indeed; but the sufferer here is shown to be the victim of chronic bronchitis and is subject to violent fits of coughing, and Dr. Roeling testified that, for this reason, "I would not operate on him under existing conditions."

Even Dr. Wichser, the physician of defendant, who had advised an operation, admitted that such things as chronic bronchitis might make an operation dangerous, and that he would advise such operation only after proper examination into the physical condition of the sufferer. It cannot be disputed that Flanagan suffered from bronchitis, and it is quite possible that, had Dr. Wichser made such an examination as he concedes should precede such an operation, he, too, would have reached the conclusion to which Dr. Roeling had already come, and that he would have changed his opinion as to the advisability of an operation. At any rate it cannot be said, as was said in the Donovan case, that such an operation, so far as plaintiff is concerned, would not be dangerous. The proof on this point brings this feature of the case within the doctrine

announced in Wolf v. Louisiana Milk Products Co., Inc., 8 La. App. 657, in which our brothers of the First circuit followed a most reasonable rule, which is well expressed in the editorial syllabus reading as follows:

"The refusal of injured employee to undergo a general anæsthetic for the purpose of relieving the condition of his knee by an operation fraught with danger will not affect his right to recover compensation under the Workmen's Compensation Act No. 20 of 1914, as amended."

It seems quite evident from the record that, even in his present condition, there are certain kinds of work in which plaintiff may engage, but it also appears that the particular kind of work for which he is fitted, manual labor, may no longer be indulged in without considerable danger. In McQueen v. Union Indemnity Co., 136 So. 761, we find in the syllabus the following:

" 'Permanent total disability to do work of any reasonable character' means inability to do reasonably similar work, not reasonable work regardless of its nature."

In Franklin v. Ernest Roger Co., Ltd., 2 La. App. 764, the Court of Appeal for the First Circuit, said:

"The language 'Permanent total disability to do work of any reasonable character during period of disability' in the legislation in question does not mean that the party must be unable to do any kind of work, but means permanent total disability to do work of any reasonable character that the party knows how to do and is capable of doing, which will afford him a support for himself and family."

See, also, Johnson v. Calcasieu Sulphate Paper Co., 15 La. App. 55, 130 So. 251, and Plumlee v. Calcasieu Sulphate Paper Co., 16 La. App. 670, 132 So. 811.

The judgment appealed from is affirmed.