The plaintiff, Huford E. Mitchell, has instituted this suit to recover compensation for total, permanent disability, alleged to have been produced by a bilateral inguinal hernia, sustained while in the course of his employment by the defendant, Littlejohn Transportation Company, Inc.
Plaintiff alleges in his petition that on September 13, 1939, pursuant to his duties as a "pickup" truck driver for the defendant, and whilst assisting in loading a large suction rubber hose into the truck, he felt sharp pains in both lower sides of his abdomen, resulting in the double hernia complained of. He further alleges that on September 20, 1939, he underwent an operation at the Baptist Hospital for a bilateral hernia, and was there hospitalized for about two weeks, and that on December 15, 1939, he was pronounced by defendant's surgeon and physician as being entirely cured and able to return to work; that on *Page 652 
resuming his duties, he was ordered to perform "light duties" only, and on December 30, 1939, he was summarily discharged by the defendant. He further charges that, as a result of the nature of the injuries sustained by him, he is physically incapacitated and is not able to engage in work for which he is fitted by training or experience, nor the nature of which he was performing at the time of his accidental injuries; that upon the slightest exertion, he experiences pain and stiffness in the region of his operation; that there is noticeable bulging on both sides of the operation scars, indicative of a recurring hernia; and that, as a consequence, he is totally and permanently disabled from doing any manual labor of a reasonable character.
Plaintiff further alleges that, at the time of his injuries, he worked eighty-eight hours each week at a weekly wage of $15; that defendant was engaged in interstate commerce and thus came within the regulatory provisions of the Federal Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., which prescribes the maximum hours of labor and minimum wages to be paid. He further charges that he is, therefore, entitled to recover compensation computed upon a 30 cent per hour maximum work-week of forty-two hours, plus 45 cents per hours for the additional forty-six hours in excess of the maximum workweek, or compensation at the rate of $20 per week for a period not to exceed four hundred weeks, subject to a credit of $124.70, which has already been paid him as compensation.
The defendant, in its answer, admits that plaintiff was employed as alleged by him, but denies that he sustained the injury he complains of and that he is permanently and totally disabled to do work of any reasonable character. It avers that plaintiff was operated on by Dr. M.M. Hattaway, from which operation he has completely recovered; that plaintiff resumed his duties with defendant until thereafter discharged as a result of his too frequent use of intoxicants. It admits that it is engaged in interstate commerce, but avers that plaintiff was employed and worked ten hours per day for five days per week and eight hours on Saturday, or a total of fifty-eight hours per week; that by the express provisions of Section 13 (b) of the Fair Labor Standards Act, defendant is not required to comply with the maximum hour regulations of said act; that it paid plaintiff compensation for thirteen weeks at a rate of $9.60 per week, though conceding that plaintiff was credited with compensation of $9.75 per week during said thirteen week period, 15 cents being deducted each week as plaintiff's contribution to the Federal Social Security fund.
On the issues as thus made up by the pleadings, the case was tried in the lower court and there was judgment in favor of the defendant and against the plaintiff dismissing his suit. From that judgment he has taken this appeal.
We experience little difficulty in determining whether plaintiff in truth and fact sustained an accidental injury on September 13, 1939, which resulted in the double direct hernia complained of.
As a witness in his own behalf, the plaintiff testified in support of the allegations made in his petition. He states that on the date alleged, he was ordered to drive defendant's truck to the Manhattan Rubber Manufacturing Division in this city and there "pick-up" a rubber suction hose, twenty-five feet in length and weighing approximately six hundred and fifty-two pounds, which was to be transported by and through the facilities of the defendant's transportation company. Due to its weight and length a chain, block and pulley were used to lift the hose into the truck; that while standing on the fender of the truck, assisting in lifting one of the hanging brass ends of the hose above the stake sides of the truck, his right foot slipped off the fender, precipitating him to the ground; that when he stood up he felt a dagger-like pain in his right and left side; that he then told his helper about being injured, and on reaching defendant's warehouse again complained to his foreman, who consented that plaintiff return to his home. He also states that he remained in bed until the following afternoon, whereupon he went to consult Dr. Emile Block. Dr. Block, after examining plaintiff, concluded that he was suffering from a double hernia. On the following day, plaintiff called at defendant's office and was told to consult Dr. Hattaway who, on September 20, 1939, performed a hernial operation on plaintiff.
We find that plaintiff's detailed explanation of the circumstances attending his injuries is fully substantiated by the testimony of his coworkers. *Page 653 
What is more significant of the proof of plaintiff's accidental injury is the fact that defendant had plaintiff operated on for a bilateral direct hernia, by its own physician, and paid plaintiff compensation for thirteen weeks and thereafter allowed him to resume and continue his employment.
Under such a factual situation it does not gainsay defendant to deny that plaintiff was accidentally injured while in the course of his employment. The averments in defendant's answer admits the surgical operation under the circumstances as stated, and we necessarily conclude that such an unqualified admission is binding upon defendant. Plumlee v. Calcasieu Sulphate Company, Inc., 16 La.App. 670, 132 So. 811.
The record discloses that during the year 1934, or about five years prior to the accident in question, plaintiff was examined by Dr. Block, as a result of which plaintiff was shown to have an enlarged inguinal ring, thus making him susceptible to a hernia. From this it is indirectly contended that the accident which befell plaintiff had no connection with the injuries sustained by him. It has been amply shown that during this five year interval, from the date of Dr. Block's findings and the date of the accident in question, plaintiff was engaged in continuous manual labor which, of itself, disproves any degree of disability other than that which resulted from his accident on September 13, 1939. However, it is no longer disputable that where one is already afflicted with a dormant disease or physical weakness, and that particular disease or physical weakness becomes active or virulent and superinduces disability as a result of an accidental injury growing out of the course and scope of his employment, he is entitled to compensation. Behan v. John B. Honor Company,143 La. 348, 78 So. 589, L.R.A.1918F, 862; Jackson v. Travelers Insurance Company et al., 180 La. 43, 156 So. 169; Robichaux v. Realty Operators, Inc., 195 La. 70, 196 So. 23; Bruns v. Bemis Bag Company, La.App., 8 So.2d 142.
We are, therefore convinced that the plaintiff, as a result of his employment, did in fact sustain the accidental injuries originally complained of. The affirmative proof, from which we draw this conclusion, is plausible, and is further confirmed by the disastrous consequence and the events which followed so quickly thereafter.
It is the contention of plaintiff that the operation to which he was subjected, though efficiently performed, did not effect a complete cure; that post-operative complications have rendered him physically incapable of engaging in any work to which he was accustomed, and that he still experiences pain and suffering from any reasonable physical exertion on his part. It is not contended that plaintiff has a hernia or a recurrence of a hernia. It is charged that as a result of the hernial repair undergone by him, there is presently, what might be termed, a potential hernia, or danger of its recurrence, and that any effort or strain of work which he may apply himself to, will precipitate its recurrence. On the other hand, defendant contends that following a successful operation, and an uneventful convalescence, plaintiff was entirely cured and relieved of all further disability as of December 15, 1939, up to which date compensation had been paid.
The issue, therefore, is one of fact. Is plaintiff disabled so as to render him unable to perform any reasonable manual labor.
Plaintiff produced four medical experts, namely, Drs. T.T. Batson, Frank Chetta. F.L. Loria and Cosmo Tardo, all of whom testified that they examined plaintiff on several occasions during the course of the year following his operation, and during the trial of the case below. Their respective findings are in substantial accord, save that of Dr. Loria, who, when recalled as a witness for plaintiff in rebuttal, readily conceded that his original findings, as previously testified to, were erroneous. These specialists testified to the thoroughness of their examinations and all agreed in substantial measure that, though the operation performed on plaintiff was eminently and efficiently done, plaintiff's abdominal muscles are weaker than found in normal physiques, and that there are defects in the region of both scars, from which there is a definite bulging, indicative of a potential hernia or the grave possibility of a recurrence of a direct bilateral inguinal hernia. They state that this physical condition might readily develop into an active hernia under heavy strain or work; that, though the hernia may never recur as a result of heavy manual labor, plaintiff should be cautious in selecting employment. They further state that plaintiff does not *Page 654 
show any present symptoms of an existing hernia. However, they conclude that this danger of recurrence does not permit plaintiff to engage in laborious work or strain and that, as a consequence, his disability precludes him from manual labor of any reasonable character.
We are also confronted with the testimony of five medical experts produced by the defendant, namely, Drs. R.B. Harrison, C. Greenes Cole, Shirley Lyons, M.M. Hattaway and F.F. Boyce. It is shown that Drs. Hattaway and Lyons performed the operation on plaintiff. All of these named experts subjected plaintiff to thorough and exhaustive examinations. Their respective findings are in complete accord. They state that the operation performed on plaintiff was eminently successful and his convalescence an uneventful one; that the period of time allowed plaintiff to fully recover greatly exceeded what is ordinarily observed in such cases. They assert with equal positiveness that plaintiff presents no objective evidence or symptom of a recurring hernia, or of any defect or weakness in his abdominal wall from which a potential hernia exists; that the slight bulging found in the region of the abdominal scars can have no possible relation to a hernia or its recurrence, nor is there any physical indication that plaintiff will, upon strain or effort, have a recurring hernia. They conclude that plaintiff's physical condition is superior to that which he enjoyed prior to his accident, and that he is fully able to apply himself to and engage in any form of reasonable manual labor, and for which they would recommend him without reservation.
An analysis of the testimony presents us with nine medical specialists who, so far as the record discloses, stand on equal footing with respect to professional and personal integrity, and whose testimony ought to be of equal weight. Unfortunately, their findings and opinions, as is too frequent the case, are in conflict.
We are not unmindful of the liberality which our law accords an employee in suits of this character, but we must equally heed the admonitions of our jurisprudence that cases of this nature do not present an exception to the rule that a plaintiff, to be successful, must make out his case with legal certainty. This, the plaintiff in this case, has failed to do.
Courts are not permitted to indulge in speculation or conjectures, nor should we, in this case, assume that because hernias do possibly recur, as evidenced by statistical data, that plaintiff's will. To predicate a recovery for compensation in one case on the theory that there is an imminence of danger because statistics show a possibility of recurrence, would, as a matter of law, make every post operative hernia case one of permanent total disability, irrespective of impressive testimony in proof of the fact that the victim has fully recovered and is able-bodied and relieved of further disability. This we cannot do.
Our consideration of all the testimony satisfies us that plaintiff has not only failed to prove that he has a recurrence of a hernia, or that his physical condition as a result of the hernial operation performed is such as would prevent him from engaging in gainful employment, but, on the contrary, we are convinced that plaintiff has been entirely cured and relieved of all pre-existing hernial disability and that he is fully able to perform work of a reasonable character, work to which he is accustomed or which his training and experience has qualified him.
It is conceded that plaintiff was paid compensation by the defendant for a period of thirteen weeks at the rate of $9.60 per week, or a total of $124.80. Plaintiff contends, however, that in view of the applicability of the Fair Labor Standards Act of 1938, he was entitled to a minimum of $20 per week during said thirteen week period.
The record discloses that under the provisions of said statute, and as testified to by A.B. Abercombie, District Supervisor of the Interstate Commerce Commission, for the class of employees to which plaintiff belonged, the maximum hours of work permitted thereunder was sixty hours per week, irrespective of the minimum wage schedule prescribed. In other words, an employer, though engaged in interstate commerce, was authorized to work "pick-up" or "local" drivers as much as sixty hours per week, without being subjected to the overtime and minimum wage schedule of the statute.
It has been amply shown that plaintiff's work-week with defendant did not exceed fifty-eight hours per week and, therefore, his employment, as to hours and pay, falls within the permissive authority of the statute.
The remaining contention of plaintiff is equally without merit. As shown, *Page 655 
plaintiff was paid compensation in cash of $9.60 each week, for a period of thirteen weeks. It is admitted that the compensation to which plaintiff was rightfully entitled was the amount of $9.75 per week, or a deficit of 15 cents weekly. It is shown that this differential of 15 cents per week resulted from the mistaken belief of defendant that this small amount had to be deducted by it each week, and credited on its books in favor of plaintiff as the latter's contribution to the government social security fund. It is well known that in all industries deductions by employers of labor of these small weekly contributions from the weekly wages of employees is obligatory.
The defendant, in so doing, unquestionably acted in good faith and in the honest belief that it was complying with the law and acting for the ultimate benefit of the employee. The lower court dismissed plaintiff's suit without recognition of this small item. For us to recognize that plaintiff is entitled to judgment in his favor for this small amount, $1.95, would necessitate a reversal of the judgment rendered below.
In view of the good faith of the defendant, the purpose and motive prompting this deduction, though done in error, and the trivial amount involved, we feel justified in affirming the judgment rendered below. Plaintiff's contention is sufficiently answered by the maxim "de minimis non curat lex".
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.