309 So.2d 877 (1975)
Charles A. BATCHELOR, Plaintiff-Appellant,
v.
FIRESTONE SYNTHETIC RUBBER AND LATEX COMPANY et al., Defendants-Appellees.
No. 4931.
Court of Appeal of Louisiana, Third Circuit.
March 19, 1975.
Rehearing Denied April 15, 1975.
Writ Refused June 20, 1975.
*878 Shelton & Cline by Thomas R. Shelton, Rayne, for plaintiff-appellant.
Raggio, Farrar, Cappel & Chozen by R. W. Farrar, Jr., Lake Charles, for defendants-appellees.
Before FRUGÉ, DOMENGEAUX and WATSON, JJ.
WATSON, Judge.
This is a workmen's compensation suit filed by the plaintiff employee, Charles A. Batchelor, against his employer, Firestone Synthetic Rubber and Latex Company, and its insurer, Liberty Mutual Insurance Company, to recover for injuries allegedly received in an accident on March 30, 1972, while working as a mechanic for Firestone. Plaintiff claimed total disability as the result of a right inguinal hernia.
Defendant admitted plaintiff's employment at a salary of $5.26 an hour for 40 hours per week or an average weekly wage of $210.40 but denied that plaintiff had sustained an accident during the course of his employment.
The trial court dismissed plaintiff's suit and made the following factual findings:
1. Plaintiff suffered a strain during the course of his employment with defendant on March 30, 1972, which resulted in a recurrent right inguinal hernia that was repaired by Dr. Robert B. Clifton on April 10, 1972;
2. Plaintiff is totally and permanently disabled because of the weakened condition of his side and groin; and
3. Plaintiff did not report the accident to his employer until November, 1972, for fear of losing his job.
The trial court denied recovery on the basis of Womack v. Pickett, 283 So.2d 852 (La.App. 2 Cir. 1973); writ refused, 284 So.2d 773 (La.), and decided that plaintiff could not recover workmen's compensation benefits because he did not promptly report the accident to his employer.
Plaintiff has appealed from the adverse judgment contending that the trial court committed manifest error in denying workmen's compensation benefits.
The testimony was as follows:
Josie Thomas Lambert, a registered nurse employed by Firestone at its first aid *879 station, testified that plaintiff Batchelor came by the first aid station a couple of times to see Dr. Smith in March of 1972. No record was made of these visits, but Lambert testified that plaintiff did state on a date in March, which could have been March 30, 1972, that he was suffering with pain in the hernia area. Lambert testified that a record was not made because Batchelor's discomfort was in the area of previous surgery and thus thought to result from that surgery rather than another accident. Lambert was aware that plaintiff tiff Batchelor had had three hernia operations prior to his visit to the first aid station in March.
Keith S. Morrill testified that he was plaintiff's supervisor for two or three years and plaintiff was an excellent and conscientious mechanic. Morrill was Batchelor's supervisor on March 30, 1972. He described Batchelor as a perfectionist in his work. Morrill did not recall any conversation with Batchelor concerning his being hurt on the job but did recall Batchelor telling him he was going to have an operation on April 10, 1972.
Benford F. Trahan, industrial relations manager at the Firestone Plant, testified that plaintiff Batchelor had been employed at the plant since 1956. Trahan's records showed that Batchelor's first report of an industrial accident on March 30, 1972, was made in November of 1972. Trahan advised Batchelor on November 10, 1972, when Batchelor reported back to work that Batchelor could no longer work for Firestone because of his physical disability.
Oren Reed Whitman testified that he was a mechanic with Firestone and a co-worker of Batchelor. On March 30, 1972, he and plaintiff were working on a Loggerman high pressure water pump when Batchelor "... stood up, grabbed his side and said, `Whitman, I think I've hurt myself.'" (TR. 73) Whitman told Batchelor to go to first aid and Batchelor did so. The following day was Good Friday and a company holiday. He next saw plaintiff on Monday after Easter Sunday when Batchelor told Whitman that he was hurting and showed Whitman a bulge on his side through his overalls. Plaintiff informed Whitman that he was going to have surgery on April 10, 1972. Whitman did not report the occurrence of the accident on March 30 and, as far as he knew, Batchelor didn't either.
Virgil LeBlanc, a mechanic at Firestone for 18 years, testified that plaintiff told him he had ruptured himself while working on a Loggerman pump and was going to take off a day to see the doctor; LeBlanc reported to the secretary or the general foreman that Batchelor would be off that Friday, which was around the 5 or 6 of April, 1972. LeBlanc said that he had been Batchelor's foreman but did not recall whether he was Batchelor's foreman at this time. He did recall that it was on a Thursday that Batchelor told him he was going to see the doctor the following day, a Friday.
Mrs. C. A. Batchelor, wife of plaintiff, testified that her husband returned from work on March 30, 1972, in pain. She recalled the specific date because the next day was Good Friday. On Monday, the pain was more severe and plaintiff called Dr. Clifton who subsequently performed an operation on April 10. Following the operation of April 10, 1972, plaintiff sustained an injury at home when he fell over a chair, and he had still another hernia operation in August.
Plaintiff testified that he had been employed as a mechanic at Firestone for 16 years and had had five hernia operations. The first hernia was on the left side and surgery for it was performed on November 22, 1963. Plaintiff was paid workmen's compensation for that hernia. Plaintiff then had a hernia on the right side and surgery for it on February 25, 1968. He had another hernia and surgical repair on the right side in October of 1971. Plaintiff did not know exactly when he sustained his first hernia on the right side but *880 said he thought it was when he was working on pumps. The second on the right side, in 1971, occurred while he was working for Firestone on a Loggerman pump. Plaintiff had operations for these hernias but did not attempt to collect workmen's compensation. He testified that he was afraid he would be laid off if he did so. Plaintiff also testified that he had received some harassment about his first hernia and workmen's compensation claim from the master mechanic, B. S. Walker.
Plaintiff testified that he injured himself at work on March 30, 1972, while unloading a pump and trying to fit a rod in the crankshaft. His co-worker, Oren Whitman, was the only one present. Shortly after the accident plaintiff went to the first aid station to see the company physician, Dr. Charles M. Smith.
Plaintiff testified that he saw Keith Morrill, his supervisor, while enroute to first aid to see Dr. Smith and told him:
"`Keith, I believe I ruptured myself again and I'm going to first aid.'" (TR. 115-116)
Plaintiff said he told nurse Lambert on March 30 he had ruptured himself, as well as Dr. Smith, but Dr. Smith, after an examination, attributed plaintiff's pain to adhesions from his previous surgery.
Dr. Charles M. Smith was stipulated to be a medical expert and testified that he is employed by Firestone as plant physician. Dr. Smith recalled seeing plaintiff at the Firestone first aid station prior to plaintiff's surgery on April 10, 1972, but did not make a written record of the visit or visits. Dr. Smith testified as follows:
"The gentleman presented himself with the chief complaint that he thought he had re-ruptured himself, and wanted to know if I would fix it." (TR. 130)
Dr. Smith said that plaintiff had pain and swelling, but Dr. Smith was not convinced there was a recurrence of his hernia. Dr. Smith did not query plaintiff as to how he sustained his injury.
Dr. Robert B. Clifton was stipulated as an expert in the field of general surgery and testified that he performed surgery on Batchelor for a left inguinal hernia on November 22, 1963, and next saw plaintiff on April 4, 1972, when Batchelor came to Dr. Clifton's office with a recurring right inguinal hernia. Dr. Clifton advised Batchelor to have surgery and performed the hernia repair on April 10, 1972. Subsequently, Dr. Clifton operated again for a right recurrent hernia on August 1, 1972. Dr. Clifton testified that plaintiff's tissues were so weak that he was unable to do any heavy lifting or manual labor and that any further hernia repair would be extremely difficult and possibly not feasible. The August hernia surgery required a Marlex synthetic tissue graft and a Cooper ligament repair.
Robert Dartez testified that he was a mechanic and co-worker with Batchelor at Firestone when Batchelor sustained a hernia in October of 1971. The two were working on a Loggerman pump when Batchelor exclaimed that he had hurt himself and Dartez told him to go to first aid. Batchelor replied that they had previously called him in the office and raised the devil with him for reporting an accident and, since he needed his job, he would not report it. Dartez, an employee at Firestone for 31 years, said he did not report Batchelor's 1971 accident. Prior to Batchelor's surgery in April of 1972, Batchelor told Dartez that he had gotten hurt again on the pumps.
Herbert Baker, a retired maintenance foreman at the Firestone plant, testified that he was Batchelor's supervisor at the time of Batchelor's 1963 accident and that he was told to send Batchelor to the office for a conference with the master mechanic in connection with that accident.
We agree with the trial court that plaintiff suffered a hernia in an accident *881 on March 30, 1972, during the course of his employment with Firestone; that he had surgery on April 10, 1972 for the hernia; and that he is permanently disabled as a result of the weakened condition in his groin.
The only issue for decision is whether or not plaintiff promptly reported the accident to his employer as required by LSA-R.S. 23:1221(4) (q).
In Womack v. Pickett, supra, cited by the trial court, a delay of five weeks in reporting an accident was held to bar recovery. However, in that case, there was also no attendance by a physician within a thirty-day period as required by the statute.[1] There was also a close question as to whether or not plaintiff Womack actually sustained an accident in the course of his employment. Here, in contrast, we have only the question of what constitutes prompt notice to an employer of an accident.
It is clear that plaintiff went to the Firestone first aid station on March 30, 1972, following his accident. Had Dr. Smith and nurse Lambert made a written record of this visit it would have constituted timely notice to the employer of plaintiff's accident, even though Dr. Smith failed to diagnose a hernia recurrence at this time. Johnson v. Calcasieu Sulphate Paper Co., 15 La.App. 55, 130 So. 251 (1930). Flanagan v. Sewerage & Water Board, 19 La.App. 154, 140 So. 83 (1932). While the 1968 amendment to LSA-R.S. 23:1221 provides that no recovery can be made for inguinal hernia unless the accident is promptly reported to the employer, distinguishing a hernia causing accident from other accidents which must be reported within six months, the statute did not change the law as to what constitutes notice of an accident. In the instant case all of the evidence indicates that plaintiff in fact sustained an accident on March 30, 1972, as found by the trial court. There is absolutely no evidence to indicate otherwise. He went to the plant physician and *882 subsequently had surgery on April 10. The fact that the agents of plaintiff's employer, nurse Lambert and Dr. Smith, erroneously assumed that his symptoms resulted from previous surgery and therefore failed to make a record of his visit cannot be held against plaintiff. It was not incumbent on plaintiff to diagnose his injuries, although from Dr. Smith's account he in fact did so.
"The employee went to the employer's physician and certainly we cannot hold him accountable if that physician failed to discover the entire extent of plaintiff's injuries." Marmolejo v. Fairmont Roosevelt Hotel Co., Inc., 301 So.2d 375 at 378 (La.App. 4 Cir. 1974).
It has been squarely held that a visit to a company doctor shortly after an accident is sufficient compliance with the requirement of giving notice of injury to the employer. Wherland v. Crowell Long Leaf Lumber Co., 26 So.2d 712 (La.App. 1 Cir. 1946), rehearing refused, 27 So.2d 184.
The factual situation here is very similar to that in Hayden v. Red Ball Motor Freight, Inc., 230 So.2d 661 (La.App. 2 Cir. 1970). There, as here, there was some uncertainty as to whether plaintiff was reporting his hospitalization and surgery for the purposes of hospitalization benefits or compensation. It is undisputed that plaintiff Batchelor and Dr. Clifton signed an "accident and sickness claim" which was received by Firestone on April 12, 1972. This form reported that Batchelor had a right inguinal hernia which was surgically repaired. While the form states that the injury did not arise out of employment, there is no showing that this statement in any way misled plaintiff's employer or that the employer was prejudiced thereby. LSA-R.S. 23:1295.
For the foregoing reasons, we find that the trial court erred as a matter of law in holding that plaintiff herein did not meet the requirement of reporting his accident to his employer.
It is uncontroverted that plaintiff is totally and permanently disabled. There is some dispute as to whether or not this disability results from his employment injury consisting of a right inguinal hernia on March 30, 1972, or his hernia recurrence on the right side which occurred at home and for which he had surgery August 1, 1972.
The hernia recurrence for which plaintiff had surgery August 1, 1972, occurred while plaintiff was convalescing from the April surgery and was not at work. Dr. Clifton testified that, while he thought following plaintiff's surgery in April that plaintiff would be able to return to work, the short interval before the recurrence indicated that he was mistaken:
"I've had hernias recurr [sic] but I've never had a hernia recur in four to six weeks after surgery." (TR. 150)
* * * * * *
"I believe I testified that I felt he would be able to go back to his original job. So I would have to say that I felt that there had not been enough damagetissue damageat this time to assume he would be any more susceptible to a hernia than he was for the second one. My assumption was obviously wrong." (TR. 163)
* * * * * *
"THE COURT: So, actually, you think probably he was more susceptible to sustaining a hernia through ordinary physical activity after your April operation, than he was before he had had that hernia? Or do you?" (TR. 164)
* * * * * *
"THE WITNESS: In retrospect I would say yes. At the time I would have said no. But retrospect is proof positive since he did have a recurrent hernia after the April repair." (TR. 165)
We are convinced that plaintiff is totally and permanently disabled as the result *883 of his accident of March 30, 1972. His hourly wage was $5.26 and he is therefore entitled to the maximum compensation payable at the time of his injury or $49.00 per week for five hundred weeks. LSA-R.S. 23:1202, 23:1221.
It is therefore ordered, adjudged and decreed that there be judgment in favor of plaintiff, Charles A. Batchelor and against defendants, Firestone Synthetic Rubber and Latex Company and Liberty Mutual Insurance Company, jointly and in solido, for workmen's compensation benefits at the rate of Forty Nine and No/100 ($49.00) Dollars per week beginning March 30, 1972 not to exceed a period of five hundred weeks, with legal interest on any past due payments from due date until paid and for medical benefits as provided by law.
All costs are assessed against defendants-appellees.
Reversed and rendered.
NOTES
[1] LSA-R.S. 23:1221.

§ 1221. Temporary, permanent or partial disability; schedule of payments
Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
(2) For injury producing permanent total disability to do work of any reasonable character, sixty-five per centum of wages during the period of disability, not beyond five hundred weeks.
Amended by Acts 1968, Ex.Sess., No. 25, § 3.
(4) In the following cases the compensation shall be as follows:
* * * * * *
(j) For the loss of both hands, or both feet, or both eyes, one hand and one foot, sixty-five per centum of wages during five hundred weeks.
Amended by Acts 1968, Ex.Sess., No. 25, § 3.
(q)(1) In all claims for inguinal hernia, it must be established by a preponderance of the evidence that the hernia resulted from injury by accident arising out of and in the course and scope of employment, that the accident was reported promptly to the employer, and that the employee was attended by a licensed physician within thirty days thereafter.
(2) If the employee submits to treatment, including surgery, recommended by a competent physician or surgeon, the employer shall pay compensation benefits as elsewhere fixed by this Chapter.
(3) If the employee refuses to submit to such recommended treatment, including surgery, and establishes by a preponderance of the evidence that his refusal is based upon his conscientious religious objection thereto or that such recommended treatment, including surgery, involves an unusual and serious danger to him, the employer shall pay compensation benefits as elsewhere fixed by this Chapter. In all other cases of the employee's refusal to submit to such recommended treatment, including surgery, the employer shall provide all necessary first aid and medical treatment and supply the necessary truss, support, or other mechanical appliance at a total cost not in excess of five hundred dollars. In addition, the employer shall pay compensation for a period not to exceed twenty-six weeks.
(4) Recurrence of the hernia following surgery shall be considered as a separate hernia, and the provisions and limitations of this section shall apply.