Opinion by
Mr. Justice Moore.
This writ of error is directed to a judgment of the district court affirming an award of the Industrial Commission, under the terms of which the claimant Raymond C. Beebe received benefits under the Workmen’s Compensation Act based on a finding of permanent partial disability to the extent of 60% of the use of his right arm measured at the shoulder. There is no issue involved relating to temporary disabilty benefits.
Beebe, the claimant, suffered an injury to his shoulder while serving with the Armed Forces of the United States during World War II. He was discharged from a veterans hospital in 1948. At all times thereafter he received certain benefits payable to veterans for service-connected disability. The percentage of disability and the amount of the benefits thus received varied from time to time. Claimant received no treatment for his service-connected shoulder injury between 1948 and September 19, 1959. On the latter date he suffered a *8 shoulder injury resulting from a fall in the course of his employment by the Rocky Mountain Trailer Sales, Inc. He stopped work on September 19, 1959, and on September 21 he went to the Veterans Hospital in Denver, where he subsequently underwent a fusion operation which will substantially and permanently limit the use of his right arm. This operation was performed without notice to, or consent of, his employer or the insurance carrier.
The employer’s “First Report of Accident” was dated October 3, 1959; received by the insurance carrier October 5, 1959, and filed with the Industrial Commission on November 18, 1959. On the date last mentioned the insurance carrier filed a General Admission of Liability for all temporary total disability and also “* * * for such permanent disability as may hereafter be determined to exist.”
June 6, 1960, more than eight months after the accident on which the claim was based, the insurance carrier filed an “Admission — Special Liability” by which it acknowledged liability for the payment of the total sum of $5,023.20 to extend over a period of 124 weeks on account of “60% loss of arm at the shoulder.” Notice of this admission of liability was sent to claimant on June 7, 1960, and no objection thereto was filed by him. He did however make application for a lump sum settlement.
By letter dated June 20, 1960, addressed to the commission, counsel for the insurance carrier sought to withdraw the special admission of liability above mentioned. July 1, 1960, counsel for the carrier forwarded to the commission a medical report relating to claimant’s shoulder injury, signed by a Dr. Newman, and requested that the case be set down for hearing. Thereupon the commission issued the following notice to all the parties:
“You will take notice that the claim filed herein will *9 be heard before a Referee of the Industrial Commission of Colorado on the 20th day of July A.D. 1960, at the hour of 9:00 A.M., at Denver, Colorado, at room 704 State Capitol Annex, at which time you may be present and submit any testimony you desire to offer and cross-examine witnesses of the adverse party. Arrange to have all witnesses present at that time. The purpose of said hearing is to determine: whether or not claimant’s condition resulted from an accident arising out of the course of his employment; period of temporary total disability; degree of permanent disability.”
At the hearing held pursuant to the above notice the following was stipulated into the record:
“The Referee: Let the record show that the respondents filed their Special Admission of Liability on June 2, 1960, showing that a payment of compensation for temporary total disability had been paid for the period beginning September 20, 1959, to and including May 22, 1960, a gross amount of $1408.75, at that time they admitted to a 60% loss of the use of the right upper extremity as measured at the shoulder, specifically for a period of 124.8 weeks, which they now seek to withdraw.”
Claimant testified at some length concerning the different employments in which he was engaged after his discharge from the Veterans Hospital in 1948 and prior to the accident of September 1959. Concerning the condition of his shoulder at the time of the hearing he stated: “* * * it is fused and my limitation of movement with this arm is limited and I cannot do the things I did before in reaching and lifting.” He stated that the army service-connected disability was “small” and that “it still didn’t prevent me from doing mechanical work and semi driving.” The record is clear to the effect that claimant had no medical treatment for his shoulder from 1948 until after the accident in September 1959; that he had been able to work at a number of occupations *10 which ordinarily require the abilities of an able-bodied man; and that after the accident and subsequent surgery, he was no longer able to follow such' occupations.
Medical testimony came from two physicians, Dr. Barnard and Dr. Newman. The former, called by claimant, estimated the present disability at between 60 and 65%. He made no attempt to allocate any part of that disability to the previous injury resulting from military service. Dr. Newman had never seen the claimant until after the operation was performed following the accident of September 1960. From an examination of X-ray photographs of the shoulder he gave his opinion that the entire disability was due to the old injury which occurred in the army.
The findings of the referee, which were adopted by the commision, contain the following pertinent statement:
“Evidence was received to the effect that claimant received no treatment whatever for his shoulder condition during the period between 1948 and 1959. Medical evidence was undisputed to the effect that claimant presently has between 60% and 65% loss of use of his right upper extremity as measured at his shoulder. In the absence of any probative proof that there was a preexisting loss of physical function in the affected member, the Referee can only assume claimant’s present disability flows directly from effects of his industrial injury.”
To the findings entered by the referee the commission added the following pertinent language before making its final award:
“It is further found that the respondents herein after extended administration of the claimant’s claim for compensation on June 2, 1960, filed their Admission of Special Liability designating that they would pay a certain amount to the claimant for settlemeñt of his industrial injury. This Admission of Special Liability was *11 filed eight (8) months after the respondent insurance company admitted full liability for consequences of the claimant’s accident. Thereafter the respondent insurance company sought to withdraw its Admission of Special Liability based upon evidence which allegedly was available during the entire period above cited. Upon proper hearing the respondents failed to produce any evidence which was not available to them at all times preceding the date when they filed a Special Admission of Liability.”
As grounds for reversal it is argued, inter alia:
“That in making said Orders and Awards the Referee and the Commission acted without and in excess of their powers.
“That the Findings of Fact by the Referee and Commission do not support said Orders and Awards.”
The points relied on for reversal of the judgment were considered by this court in Industrial Commission of Colorado, et al. v. Johnson Pontiac, Inc., et al., 140 Colo. 160, 344 P. (2d) 186, in which a somewhat similar factual situation was presented. From the opinion in that case we quote the following pertinent language:
“* * * For over two years compensation was paid, during all of which time the insurance company knew all the facts pertinent to the case. There is no suggestion of fraud. The conclusion of the district court that, ‘The General Admission of Liability * * * is patently based on a misapprehension and mistake of fact,’ has no support in the record. This more fully appears in the discussion of the second question.
“We hold that the Industrial Commission, under all the facts involved in this case, did not exceed its authority or abuse its discretion in refusing to permit the withdrawal of the General Admission of Liability, and the district court erred in reaching a contrary conclusion. Neal v. Stuart Foundry Co., 250 Mich. 46, 229 N.W. 595; *12 Mitchell v. Littlejohn Transportation Co., (La. App.), 10 So. (2d) 651.
* * *
“* * * Even though it be assumed, for the purpose of argument, that the insurance carrier, under the facts in this case, is not bound by its admission of liability, there was ample evidence to support the award of the commission. * * *”
In the instant case there was nothing to indicate any fraud or concealment of facts on the part of the employer or the claimant. For eight months claimant received compensation, “during all which time the insurance company knew all the facts pertinent to the case.” Apart from the fact that the commission did not abuse its discretion in declining to permit a withdrawal of the admission of liability, there is sufficient evidence of causal connection between the accident and the 60% disability to sustain the award of the commission.
The judgment is affirmed.
Mr. Justice Sutton and Mr. Justice Frantz concur.